UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| IN RE SUBPOENA TO FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP | ) ) ) ) | Case No. _____ |
| | ) | (Case No. CV07 936RSM, Western District of Washington) |
| _____ | ) ) | |
| | ) | **IMMERSION CORPORATION'S** |
| MICROSOFT CORPORATION, a Washington corporation, | ) ) | **MOTION AND MEMORANDUM OF POINTS AND AUTHORITIES IN** |
| | ) | **SUPPORT OF ITS MOTION TO** |
| Plaintiff, | ) | **COMPEL PRODUCTION OF** |
| | ) | **DOCUMENTS BY NON-PARTY** |
| v. | ) | **FINNEGAN, HENDERSON, FARABOW,** |
| | ) | **GARRETT & DUNNER, L.L.P.** |
| IMMERSION CORPORATION, a Delaware corporation, | ) ) ) | |
| Defendant. | ) ) | |
| _____ | ) | |

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

I.    **INTRODUCTION**

This is a motion to compel the law firm of Finnegan, Henderson, Farabow, Garrett & Dunner ("Finnegan") to comply with Immersion Corporation's third-party subpoena for the production of a narrow class of non-privileged documents highly relevant to a lawsuit pending in the Western District of Washington.  Despite Immersion's patient and extensive efforts to meet and confer, avoid motion practice and obtain the production of documents that are readily available, and after being led to believe over a period of four months that Finnegan intended to comply with the subpoena in some manner, Finnegan ultimately failed to make any commitments to produce documents or provide any meaningful information on its position.

The underlying case involves a dispute between Microsoft Corporation ("Microsoft") and Immersion regarding the interpretation of a 2003 "Sublicense Agreement" between Immersion and Microsoft (the "SLA").  Generally speaking, the SLA provided Microsoft with certain rights to sublicense Immersion patents to Sony, and certain rights to payment from Immersion as set forth in the SLA.  It is known that in the 2005 time frame, Microsoft negotiated with Sony in an attempt to grant Sony the sublicense.  The Finnegan law firm, and at least Finnegan attorney Kara Stoll, conducted the negotiations on behalf of Sony and corresponded directly with Microsoft on these issues, exchanging emails and drafts relating to the negotiations and Microsoft's rights under the SLA.  There is no dispute in the underlying case that these efforts by Microsoft to exercise its rights under the SLA are an appropriate subject of discovery and involve information relevant to the interpretation of the SLA.  Indeed, Microsoft produced such materials, and they contain direct and implicit statements regarding disputed issues in the current suit.

Because one or more of Sony's attorneys at Finnegan were directly communicating with Microsoft, and Immersion does not have the complete record and does not know if Microsoft retained and produced all the documents that existed, Immersion served a subpoena on Finnegan. The subpoena requested the documents and communications exchanged between Microsoft and

1    Sony (and Finnegan, its representatives) concerning attempts by Microsoft to exercise its rights

2    under the SLA, grant Sony the contemplated sublicense, and force a settlement of the Sony

3    Lawsuit. The documents are not privileged because they are Finnegan's (and Sony's)

4    communications with Microsoft. Nor are the documents hard to find – they are in the emails and

5    files of Finnegan attorney Kara Stoll and others with whom she worked on this project in the

6    summer of 2005.

7         Immersion served Finnegan with the instant subpoena in February 2008, but Finnegan

8    has refused to comply and led Immersion to believe that Finnegan needed time to investigate and

9    identify for production a set of documents that would be deemed satisfactory. When Finnegan

10   served boilerplate objections, Immersion repeatedly sought to meet and confer and patiently

11   honored Finnegan's requests for an extended period of time to investigate and set forth its

12   position. To facilitate matters, Immersion also explained the nature of the requested discovery,

13   identified the Finnegan attorneys to be consulted about the documents, and even provided copies

14   of emails and documents that Microsoft had produced in the underlying suit to illustrate the

15   kinds of material already known to exist. The abundant information provided made it obvious

16   that the requested discovery is highly relevant, nonprivileged, and is readily available from

17   specific individuals at Finnegan. Despite repeated firm assurances from Finnegan that it was

18   investigating and would provide its position imminently, Finnegan never did so. Nor did

19   Finnegan suggest that the only responsive documents were those that Immersion had provided as

20   samples. Rather, Finnegan repeatedly deferred and ultimately never provided any meaningful

21   information about the documents in its possession.

22        Finnegan continues to refuse to produce any responsive documents. Finnegan may not

23   disregard the subpoena or evade compliance. Immersion respectfully requests the Court to

24   compel Finnegan to produce forthwith the requested documents and communications.

25

26

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 2

## II.     FACTUAL BACKGROUND

### A.     The Underlying Case

The subpoena at issue on this motion was issued in connection with a breach of contract case pending in the Western District of Washington.  In June 2007, Microsoft filed its complaint against Immersion alleging a single claim that Immersion owes Microsoft certain sums under the SLA.  Declaration of David R. Kaplan dated June 19, 2008 ("Kaplan Decl."), Ex. 1  (Amended Complaint).  Immersion is a leading developer of tactile feedback, or "haptic," technology, which allows users to interact with computers through the sense of touch.  Immersion's current dispute with Microsoft in turn has its roots in a previous patent infringement lawsuit that Immersion filed against Microsoft and Sony in February 2002 in the Northern District of California.  In that case, Immersion alleged that certain Sony PlayStation and Microsoft Xbox video game consoles, controllers, and games infringed two of Immersion's patents.  In July 2003, Immersion and Microsoft settled.  Sony and Immersion did not settle, and the case against Sony went to trial in 2004.  Immersion won, and obtained a judgment for $82 million in damages and other court-ordered relief, which Sony later satisfied in full.  *Id.*, Ex. 2.  Finnegan did not represent Sony at trial, but represented Sony on its appeal from the judgment (which appeal Sony later withdrew) and Sony's negotiations with Microsoft in 2005, and perhaps earlier.

The main agreement in question in Microsoft's lawsuit against Immersion is a "Sublicense Agreement" or "SLA" that Immersion and Microsoft entered in 2003.  Under the SLA, for a 24-month period, Microsoft was granted the right to sublicense Immersion's patents to "Game Platform Vendors" – and to Sony in particular.  *Id.*, Ex. 3, (redacted SLA on file with the SEC), ¶ 2(a), (c), (j).  Microsoft sought the rights under the SLA to use Immersion's suit against Sony as a bargaining chip in negotiations that Microsoft might have with Sony on various matters, including in connection with Microsoft's efforts to settle a fierce patent lawsuit that Microsoft was defending against InterTrust Technologies Corp. ("InterTrust"), a digital

1    rights management company that a Sony-led investor group acquired in January 2003.[1]  *Id.*,  Ex.

2    4.  Based on documents Microsoft produced, Finnegan attorneys (including Kara Stoll)

3    conducted discussions and negotiations with Microsoft regarding a potential sublicense under the

4    SLA, and participated directly in negotiations with Microsoft principals.

5         Under the SLA, if Microsoft granted Sony a "Game Platform Sublicense," and hence

6    stripped Immersion of the "Sony Lawsuit," Microsoft would owe Immersion at least $100

7    million.  *Id.*, Ex. 3, ¶ 2(c).  However, Microsoft did not grant Sony a sublicense, and hence did

8    not owe Immersion the payments contemplated.  In turn, the SLA provided that if Immersion

9    elected in its discretion to settle the Sony Lawsuit prior to Microsoft's granting Sony a

10   sublicense, and hence deprived Microsoft of the ability to sublicense Sony, Immersion would

11   owe Microsoft at least $15 million plus a percentage of the amounts Immersion received for the

12   rights Immersion granted to Sony in the settlement.  *Id.*, ¶ 2(e), (k).  The "Sony Lawsuit" is

13   defined in the SLA as Immersion's district court action against Sony.  *Id.* ¶ 1(k).  Microsoft's

14   claim against Immersion in the present action is that Immersion owes Microsoft sums under the

15   SLA as a result of Sony's satisfaction of the final judgment in the Immersion-Sony case and

16   receipt of other court-ordered payments from Sony.  Immersion denies Microsoft's contentions,

17   and the issue of whether anything is owed is hotly disputed, as is the meaning of the SLA

18   provisions in question.

19        **B.    The Relevant Discovery That Finnegan Is Wrongfully Withholding**

20        On February 25, 2008, Immersion served the instant subpoena on Finnegan.  Kaplan

21   Decl., Ex. 5.  The subpoena was addressed to the care of Finnegan lawyer Kara Stoll and

22   specified a date of production of March 24, 2008.  *Id.*  On March 7, 2008, counsel to Immersion

23   agreed to Finnegan's request for an extension of time in which to respond or object to the

24   subpoena.  *Id.,* Ex. 6.  Also on March 7, counsel to Immersion explained to the Finnegan

25   attorney handling the subpoena, James Hammond, the factual background of the *Microsoft v.*

26   _____

[1] Microsoft ultimately settled the InterTrust lawsuit for $440 million in April 2004.  *Id.*,
Ex. 4.

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 4

1    *Immersion* case, the relevance of the requested documents, the time period in which the

2    requested discovery would have been generated, and that Finnegan attorney Kara Stoll was

3    directly involved in the negotiations with Microsoft and would likely have responsive

4    documents. *Id.*, ¶ 6. The extension was intended to allow Finnegan to look into the subpoena

5    and contact Ms. Stoll and others. *Id.* On March 24, 2008, Finnegan served written objections to

6    the subpoena, which contained boilerplate objections. *Id.*, Ex. 7.

7         Because Finnegan's response did not state that Finnegan would be producing responsive

8    documents, Immersion's counsel followed up and conducted extensive meet and confer efforts.

9    These meet and confer efforts included telephone calls on at least April 11 and May 8, 2008 to

10   Mr. Hammond to discuss the subpoena. During these discussions, Immersion's counsel provided

11   Mr. Hammond with additional background on the case and how the subpoena sought particular

12   documents that should be readily available from Finnegan. Immersion also explained that the

13   documents were being subpoenaed directly from Finnegan because it was the Finnegan attorneys

14   themselves that conducted discussions of which Immersion was aware. (There may be other

15   documents in the files of Sony entities, but there is no dispute that Finnegan attorneys were

16   direct and active participants in the communications with Microsoft regarding the SLA.) When

17   Mr. Hammond said that he would be investigating the matter and contacting the persons with

18   knowledge, Immersion referred Mr. Hammond specifically to Kara Stoll and requested that

19   Finnegan collect and produce her communications with Microsoft. Immersion also assisted Mr.

20   Hammond by referring him to other attorneys at Finnegan's Northern California office who were

21   very familiar with Microsoft's lawsuit against Immersion. In fact, other Finnegan attorneys

22   appeared in the case in connection with their defense of a deposition of a Sony witness that

23   counsel for Microsoft and Immersion had examined in December 2007 and January 2008. *See*

24   *id.*, Ex. 8.

25         On May 13, 2008, Immersion participated in another meet and confer discussion to

26   follow up on the status of Finnegan's "investigation" and whether it would be producing any

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 5

1   documents. *Id.* During the call, Mr. Hammond acknowledged that he had not yet spoken to

2   others at Finnegan to determine what responsive documents exist. *Id.* Mr. Hammond also noted

3   that it would be helpful if Immersion could identify (again) the kinds of documents that it was

4   requesting under the subpoena. While the subpoena was clear, and Mr. Stoll's documents should

5   be readily available, Immersion did so in an effort to secure compliance with the subpoena. On

6   May 14, 2008, counsel for Immersion sent Mr. Hammond a letter proposing, in the spirit of

7   compromise (and without prejudice to Immersion's rights) to clarify the already narrow

8   subpoena. *Id.* Immersion stated: "While we believe the subpoena sets out specific categories of

9   materials fairly and reasonably, in an effort to reach a compromise and avoid unnecessary

10  motion practice, we can again state that we are seeking the communications and documents

11  exchanged between Sony (or its representatives) and Microsoft (or its representatives) after July

12  25, 2003 that pertain to Sony obtaining from Microsoft a sublicense or other rights to any

13  Immersion patent, or to the Sublicense Agreement or the Immersion-Sony lawsuit. We provide

14  this clarification to facilitate the prompt production of communication with Microsoft that are in

15  no way privileged and should be readily available." *Id.*

16          On May 15, 2008, Mr. Hammond responded by stating that he had "not yet been able to

17  close the loop with everyone that needs to be involved" regarding the subpoena. *Id.*, Ex. 9.

18  Finnegan also requested samples of the documents that Microsoft had produced to facilitate

19  Finnegan's ability to respond. *See id.* Immersion then sought Microsoft's consent, out of an

20  abundance of caution, to send the documents to Finnegan. *Id.* After Microsoft did not respond

21  to Immersion's inquiry, Immersion assumed Microsoft had no objection, and on June 3, 2008

22  sent Mr. Hammond examples of documents that Microsoft had produced to Immersion and were

23  of the type that Immersion expected Finnegan to have in its files, including email

24  correspondence and documents exchanged between Finnegan's Kara Stoll and Microsoft. *See*

25  *id.*, Ex. 10.

26

On June 6, 2008, counsel to Immersion left Mr. Hammond a voicemail requesting Finnegan's final position regarding the subpoena. *Id.*, Ex. 11. On June 9, 2008, Mr. Hammond sent counsel to Immersion an email that did not provide Finnegan's final position, but instead asked questions about the documents provided and redactions that Microsoft had made. *Id.* On June 12, 2008, counsel for Immersion called Mr. Hammond in a final effort to secure compliance with the subpoena and resolve the matter amicably without judicial intervention. During the call, Mr. Hammond made no commitments to produce documents and provided no substantive information on Finnegan's position. *Id.* Accordingly, this motion follows.

The discovery requests in the subpoena are as follows:

REQUEST FOR PRODUCTION NO. 1:
     All documents relating to the Sublicense Agreement.

REQUEST FOR PRODUCTION NO. 2:
     All documents constituting or relating to communications between Sony and Microsoft relating to the Sublicense Agreement.

REQUEST FOR PRODUCTION NO. 3:
     All documents constituting or relating to communications between Sony and Microsoft after July 25, 2003 relating to Immersion and/or the Sony Lawsuit

REQUEST FOR PRODUCTION NO. 4:
     All documents relating to discussions or negotiations between Microsoft and Sony relating to the Sublicense Agreement.

REQUEST FOR PRODUCTION NO. 5:
     All documents relating to negotiations between Sony and Microsoft relating to a potential sublicense under any patent owned or held by Immersion, including drafts of any sublicense or other agreement between Sony and Microsoft and related communications.

REQUEST FOR PRODUCTION NO. 6:
     All documents constituting or relating to communications between Sony and Microsoft relating to a potential sublicense under any patent owned or held by Immersion.

REQUEST FOR PRODUCTION NO. 7:
     All documents relating to efforts by Microsoft to grant Sony a sublicense to any patent owned or held by Immersion.

1

2  <u>REQUEST FOR PRODUCTION NO. 8</u>:

3       All documents relating to efforts by Sony to obtain from Microsoft a sublicense to any patent owned or held by Immersion.

4  **III.    ARGUMENT**

5       The rules governing the scope of discovery are well-established.  Rule 26(b)(1) of the

6  Federal Rules of Civil Procedure provides that parties may obtain discovery of "any

7  nonprivileged matter that is relevant to any party's claim or defense . . . . "  Further, "[f]or good

8  cause, the court may order discovery of any matter relevant to the subject matter involved in the

9  action."  *Id.*  Discoverable information need not be admissible at trial, but merely be "reasonably

10  calculated to lead to the discovery of admissible evidence."  *Id.*  Relevance has been construed

11  broadly to encompass any matter that bears on, or that reasonably could lead to another matter

12  that could bear on, any issue that is or may be in the case.  *Oppenheimer Fund v. Sanders*, 437

13  U.S. 340, 351, 98 S.Ct. 2380 (1978).

14       **A.    <u>Finnegan's Relevance Objection Is Without Merit.</u>**

15       Finnegan improperly objects to the requested discovery on the ground of relevance.  The

16  objection is without merit.

17       This breach of contract case involves a dispute over the interpretation of a "Sublicense

18  Agreement" that Immersion and Microsoft entered into in 2003.  Microsoft's core allegation is

19  that Immersion elected to settle the "Sony Lawsuit" under the terms of the SLA, and that

20  Immersion owes Microsoft at least $15 million.  *See* Kaplan Decl., Ex. _, (First Amended

21  Complaint), ¶¶ 28, 32, 35.  Immersion disputes that it elected to settle the Sony Lawsuit under

22  the SLA, and that it has any obligation to Microsoft.  To obtain evidence and help prove

23  Immersion's interpretation of the SLA, Immersion requested from Finnegan documents relating

24  to discussions and negotiations between Microsoft (and its representatives) and Sony (and its

25  representatives, *viz.* Finnegan) relating to the SLA or Immersion.  Under Washington law, courts

26

1   typically apply the "context rule" when called upon to interpret a contract.[2] *Berg v. Hudesman*,

2   115 Wash.2d 657, 668-69, 801 P.2d 222 (1990).

3          The requested discovery relating to Finnegan's (Sony's) communications with Microsoft

4   regarding a potential sublicense bears directly on Microsoft's acts and conduct under the SLA,

5   including with regard to issues at the heart of the case.  For example, documents obtained thus

6   far confirm among other things that Microsoft made direct and implicit statements to Finnegan

7   concerning: (1) the intent, purpose, and scope of the rights provided under the SLA; (2) the

8   language of key provisions of the SLA; and (3) how the SLA might impact the judgment entered

9   in the Sony Lawsuit and compulsory royalties paid by Sony to Immersion.  There also is no

10  dispute that:

11     • Microsoft and Sony held discussions and meetings from 2004 until July 2005 when

12        Microsoft's sublicensing rights under the SLA expired, which included proposals

13        requiring Sony to pay Microsoft substantial sums for a sublicense under the SLA as

14        part of a larger cross-licensing deal.

15     • Microsoft and Sony/Finnegan discussed the deal Microsoft struck with Immersion in

16        2003, and Microsoft's payment obligations to Immersion under the SLA.

17     • Microsoft drafted and sent to Sony/Finnegan a proposed "side letter" describing steps

18        Microsoft would to take in the event of "a dispute with Immersion regarding the

19        intent" of the SLA regarding refund of compulsory royalties.

20     • Microsoft drafted and sent Sony/Finnegan a potential "Patent Sublicense Agreement"

21        that expressly referenced and incorporated terms of the SLA.  Changes made to the

22        definitions from the SLA reflect the meaning of disputed terms in the original SLA,

23        including an expansion of the definition of "Sony Lawsuit."

24

25

26

---

[2] The SLA contains a choice of law provision providing that the SLA shall be construed under Washington law.  Kaplan Decl., Ex. __, ¶ 8(c).

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 9

- Microsoft drafted and sent Sony/Finnegan a potential Sony-Immersion "Settlement Agreement and Release" which is relevant to Microsoft's understanding of the terms of a settlement agreement as contemplated by the Microsoft-Immersion SLA.

- The negotiations failed at the eleventh hour.

Finnegan has its correspondence with Microsoft. Without this discovery, Immersion does not have the complete record and does not know if Microsoft retained and produced all the documents that existed. There can be no question that the requested discovery is reasonably calculated to lead to the discovery of admissible evidence and satisfies the liberal Rule 26(b)(1) relevance standard. Indeed, the fact that Microsoft produced documents on these topics establishes their relevance.

### B.     Finnegan's Privilege Objection Is Without Merit.

Finnegan objects to the requested discovery on the ground that it seeks privileged information. This objection is without merit. Immersion has repeatedly explained to Finnegan that the subpoena does not seek privileged documents. In any event, the subpoena on its face primarily targets communications and documents exchanged between Sony (and its representatives) and Microsoft (and its representatives). These communications cannot be privileged.

### C.     Finnegan's Other Boilerplate Objections Are Without Merit.

Finnegan also asserts numerous boilerplate objections to the requested discovery, including that it is "vague, ambiguous, overbroad, and unduly burdensome." These objections are without merit. As noted, the requests are straightforward and limited to a narrow class of documents. Finnegan can respond to the subpoena with minimal or no burden. Although Finnegan attorneys already have plenty of knowledge about this case, Immersion engaged in extensive meet and confer discussions with Finnegan in which Immersion described the types of documents requested by the subpoena, and identified specific Finnegan attorneys with personal knowledge of the issues raised in the subpoena and who would likely have responsive documents

1    in their files, or could easily locate responsive documents. In addition, the requests are by their

2    nature time-limited. Tellingly, the Finnegan attorney handling the subpoena has not given any

3    firm indication that Finnegan has even begun to search for responsive documents from Kara

4    Stoll, the one Finnegan attorney known to have been involved.

5         Finnegan also objects to the requested discovery on the ground that "it can more easily be

6    obtained from a party to the litigation and is thereby unduly burdensome." This objection also

7    does not withstand scrutiny. First, the Federal Rules of Civil Procedure specifically authorize

8    discovery against nonparties, (*e.g.,* Rule 45), and the substantive considerations under Rule 26(b)

9    regarding the scope of discovery are not restricted to parties to the action. Second, the fact that

10   Immersion has already received some documents from Microsoft that fall within the purview of

11   the subpoena does not transform a straightforward production into an unduly burdensome

12   undertaking, or excuse Finnegan from its obligation to substantively respond to the subpoena.

13   Third, as Immersion expressed to Finnegan in meet and confer discussions and perhaps most

14   significantly, Immersion has no way of knowing whether Microsoft's production of documents

15   on the issues raised in the subpoena is complete.

16   **IV.    CONCLUSION**

17        The requested discovery concerns a narrow class of non-privileged documents that are

18   highly relevant to Immersion's dispute with Microsoft. It is clear that Finnegan has responsive

19   documents in its possession, but Finnegan has deferred compliance without offering any

20   legitimate reason for its refusal to produce the documents. Immersion respectfully requests the

21   Court to compel Finnegan to produce the requested discovery.

22

23

24

25

26

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 11

1    Dated:  June 23, 2008

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

HOWREY LLP
WILLIAM K. WEST
MARK L. WHITAKER

By *Mark L. Whitaker*
    William K. West, Jr.
    Mark L. Whitaker
    Howrey LLP
    1299 Pennsylvania Ave NW
    Washington, DC 20004
    Telephone:  (202) 783-0800
    Facsimile:  (202) 383-6610


*Attorneys for Immersion Corporation*

Irell & Manella LLP
Morgan Chu
Richard M. Birnholz
Alan J. Heinrich
David R. Kaplan
1800 Avenue of the Starts, Suite 900
Los Angeles, CA  90067-4276
Telephone:  (310) 277-1010
Facsimile:  (310) 203-7199

Byrnes & Keller LLP
Bradley S. Keller
Jofrey M. McWilliam
1000 Second Avenue, 38th Floor
Seattle, WA  98104
Telephone:  (206) 622-2000
Facsimile:  (206) 622-2522

*Co-Counsel for Immersion Corporation*

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 12

# EXHIBIT 1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON

MICROSOFT CORPORATION, a
Washington corporation,

        Plaintiff,

    v.

IMMERSION CORPORATION, a
Delaware corporation,

        Defendant.

NO. CV7-936RSM

FIRST AMENDED COMPLAINT
FOR BREACH OF CONTRACT

JURY DEMANDED

Plaintiff alleges:

## I. PARTIES

1.    Plaintiff Microsoft Corporation ("Microsoft") is a corporation organized and existing under the laws of the State of Washington. Microsoft's principal place of business is located in Redmond, Washington. Microsoft has paid all fees and charges necessary for it to conduct business as a corporation.

2.    Defendant Immersion Corporation ("Immersion") is a corporation organized and existing under the laws of the State of Delaware. Immersion's principal place of business is located in San Jose, California.

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 1
291/571483.07
062507 1006/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

## II. JURISDICTION AND VENUE

3. This court has subject matter jurisdiction of this action under 28 U.S.C. § 1332.

4. The defendant is found in and transacts substantial business in this district. This Court has personal jurisdiction over the defendant and venue in this district is proper under 28 U.S.C. § 1391.

5. The agreement between the parties, which has been alleged to have been breached in this action, provides for venue and jurisdiction in this Court.

## III. FACTUAL BACKGROUND

6. Immersion is the owner of certain patents for technology involving tactile sensations to users of interactive computer applications.

7. On February 11, 2002, Immersion filed a lawsuit, entitled *Immersion Corporation v. Sony Computer Entertainment of America, Inc., Sony Computer Entertainment Inc., and Microsoft Corporation*, Northern District of California Case No. C02-00710 CW (WDB) ("the Sony Lawsuit") against Microsoft and Sony entities ("Sony"), alleging that the defendants violated certain patents held by Immersion.

8. On or about July 25, 2003, Immersion settled its claims against Microsoft. On July 25, 2003, Immersion and Microsoft entered into a Sublicense Agreement ("SLA") as part of that settlement.

9. The SLA provides, among other things, that if Immersion settles the Sony Lawsuit with Sony, Immersion shall pay certain specified amounts to Microsoft. In particular, it provides that if Immersion settles the Sony Lawsuit with Sony for an amount up to $100,000,000, Immersion shall pay Microsoft the sum of $15,000,000. If Immersion settles the Sony Lawsuit for an amount between $100,000,000 and $150,000,000, Immersion shall pay Microsoft an additional

1  amount equal to 25% of the amount of the settlement in excess of $100,000,000.

2  If Immersion settles the Sony Lawsuit for an amount in excess of $150,000,000,

3  Immersion shall pay Microsoft an additional amount equal to 17.5% of the amount

4  of the settlement in excess of $150,000,000.  Under the terms of the SLA,

5  settlement amounts are defined to include "all amounts, including all royalty

6  payments and upfront, annual or other license fees (regardless of when received),

7  received by Immersion on account of any license, release, freedom from suit or

8  similar consideration granted by Immersion to Sony in respect of the Licensed

9  Patents, ... including any agreement, license, sublicense, option, investment, or

10  other transaction associated with such settlement."

11         10.     The SLA further provides that, upon Immersion's settlement with

12  Sony, Immersion was to promptly provide Microsoft with documentation of its

13  settlement with Sony.

14         11.     The SLA imposes an implied covenant of good faith and fair dealing

15  on Immersion to do all things reasonably contemplated by the SLA's terms to

16  accomplish its goals, and to refrain from doing anything that would destroy or

17  injure another party's right to receive the fruits of the contract.

18         12.     On September 21, 2004, Immersion obtained a verdict against Sony

19  in the amount of $82,000,000 (the "Verdict").

20         13.     Subsequent rulings by the court in the Sony Lawsuit increased the

21  amount of the judgment against Sony to $90,703,608.

22         14.     On March 24, 2005 the court in the Sony Lawsuit issued a

23  Permanent Injunction against Sony.  The Permanent Injunction prohibited Sony

24  from, among other things, "manufacturing, using, and/or selling in, or importing

25  into, the United States the infringing Sony Playstation system, including its

26  Playstation consoles . . . ."  The Permanent Injunction was based upon the Verdict

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 3
291/571483.07
062507 0955/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   that Sony had improperly used Immersion's patented technology involving tactile

2   sensations to users of interactive computer applications, the same technology that

3   was the subject of the claims against Microsoft in the Sony Lawsuit and which is

4   the subject of the SLA.

5         15.    On February 9, 2006, Sony filed an appeal of the Verdict.

6         16.    Immersion and Sony have settled the Sony Lawsuit. Immersion and

7   Sony's settlement of the Sony Lawsuit was effected through one or more

8   agreements between the parties, including licensing and other business

9   agreements.

10        17.    Among the agreements evidencing Immersion and Sony's

11   settlement of the Sony Lawsuit is a document entitled "Agreement," signed on or

12   about March 1, 2007. ("Immersion/Sony Settlement Agreement"). A redacted

13   copy of the Immersion/Sony Settlement Agreement was filed with the Securities

14   and Exchange Commission as part of Immersion's regular quarterly reports. At

15   the time that the Immersion/Sony Settlement Agreement was signed, Sony had

16   not satisfied the Amended Judgment and Immersion had not released the

17   Permanent Injunction.

18        18.    The "Effective Date" of the Immersion/Sony Settlement Agreement is

19   defined as "the later of the dates on which the Amended Judgment has been

20   satisfied and discharged and the Permanent Injunction has been dissolved."

21   Under the definition of the "Effective Date" and other terms of the Immersion/Sony

22   Settlement Agreement, Sony's payment of the Amended Judgment and

23   Immersion's dissolution of the Permanent Injunction are conditions and part of the

24   Immersion/Sony Settlement Agreement.

25        19.    Under the Immersion/Sony Settlement Agreement, Immersion

26   agreed to, among other things, "irrevocably releas[e] and discharg[e] the Sony

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 4
291/571483.07
052507 0955/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1   Entities . . . from any and all claims, counterclaims, demands, liabilities, suits,

2   debts, and causes of action, whether known or unknown, for alleged direct

3   infringement of any of the Immersion Patents . . . ." In connection with and

4   pursuant to the Immersion/Sony Settlement Agreement, Sony and Immersion

5   agreed to stipulate to an order dissolving the Permanent Injunction against Sony.

6          20.    Under the Immersion/Sony Settlement Agreement, Immersion

7   provided to Sony "a worldwide, non-transferable, non-exclusive, license under the

8   Immersion Patents," the same patents at issue in the Sony litigation and the

9   subject of the SLA.

10         21.    Under the Immersion/Sony Settlement Agreement, Sony also agreed

11  to pay Immersion Twenty-Two Million Five Hundred Thousand Dollars

12  ($22,500,000) for the rights provided under that agreement. The Immersion/Sony

13  Settlement Agreement contains an additional option, which, if exercised by Sony,

14  will provide Sony a further license related to non-PlayStation games, and a royalty

15  fee for each game sold ("Option").

16         22.    The Immersion/Sony Settlement Agreement further provides that,

17  regardless of the outcome of the court's ruling on Sony's pending appeal, the

18  parties shall agree to a binding arrangement that preserves the terms of the

19  Immersion/Sony Settlement Agreement. It further provides that Sony will not

20  assist ISLLC, another party remaining in the Sony Litigation, and that Immersion

21  will indemnify Sony from any claim asserted by ISLLC for infringement on the

22  Immersion Patents.

23         23.    All of these provisions demonstrate that the Sony/Immersion

24  Settlement Agreement was a settlement agreement.

25         24.    On or about March 1, 2007, the same day upon which they signed

26  the Immersion/Sony Settlement Agreement, Immersion and Sony publicly

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 5
291/571483.07
062507 0955/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  announced that they had "agreed to conclude their patent litigation," the Sony

2  Lawsuit, and announced the basic terms of the Immersion/Sony Settlement

3  Agreement.  Immersion's CEO stated in that press release that: "We are pleased

4  to have put this litigation behind us."  Despite these statements and the inherent

5  settlement nature of the Immersion/Sony Settlement Agreement, Immersion has

6  actively attempted to describe and characterize its agreements with Sony as

7  something other than a settlement in order to avoid its obligations under the SLA.

8      25.     Between March 1 and March 14, 2007, Sony paid approximately

9  $90,874.888 to Immersion.

10     26.     On March 8, 2007 and March 14, 2007, the clerk of the Ninth Circuit

11 Court of Appeals entered dismissals of Sony's appeals in the Sony Lawsuit, at the

12 request of Immersion and Sony.  The March 14, 2007 order provides:  "The

13 parties having so agreed, it is ORDERED that the proceeding is DISMISSED . . . ."

14     27.     On March 16, 2007, pursuant to the terms of the agreement

15 between them, Sony and Immersion executed a stipulation and proposed order

16 dissolving the Permanent Injunction against Sony.  The court signed and entered

17 the order on March 19, 2007.

18     28.     As a result of the settlement between Sony and Immersion, Sony

19 dropped its appeal and any opportunity for relief under the appeal.  Immersion

20 agreed not to enforce the permanent injunction it had against Sony and agreed to

21 seek to have it dissolved.  The parties also entered into an agreement setting out

22 – without regard to the outcome of the case – the rights and obligations the parties

23 had with respect to each other and the patents in suit, as well as releasing various

24 claims.  The resolution of the lawsuit and license agreement are well within the

25 kind of settlement contemplated by the SLA.

26

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 6
291/571483.07
062507 0955/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1    29.    Despite demand to do so, Immersion has failed to make any

2    payment under the SLA to Microsoft following Immersion's settlement of the Sony

3    Lawsuit.

4    30.    Despite demand to do so, Immersion has also failed to promptly

5    provide Microsoft with full documentation of Immersion's settlement with Sony.

6                    IV.  CLAIM FOR RELIEF:  BREACH OF CONTRACT

7    31.    The SLA constitutes a valid and binding contract between Microsoft

8    and Immersion.

9    32.    Immersion breached the SLA by failing to make payments to

10    Microsoft following Immersion's settlement with Sony.

11    33.    Immersion breached the SLA by failing to promptly provide Microsoft

12    with full documentation of its settlement with Sony.

13    34.    Immersion breached the SLA by violating the covenant of good faith

14    and fair dealing by actively attempting to characterize its agreements with Sony as

15    something other that what they are -- a settlement.

16    35.    As a direct and proximate result of Immersion's breaches, Microsoft

17    has been damaged in an amount provided in the SLA.  These damages include

18    the $15 million base obligation under the SLA, and 25% of the value of the

19    Immersion/Sony settlement between $100 and $150 million, and 17.5% of the

20    value of that settlement over $100 million.  The value of the settlement includes

21    (1) Sony's payments to satisfy the Amended Judgment, (2) the $22.5 million

22    payment under the Immersion/Sony Settlement Agreement and (3) all payments

23    made or to be made under the Option provided in that agreement.

24                    V. PRAYER FOR RELIEF

25    Plaintiff Microsoft prays for relief as follows:

26    A.    For judgment awarding Microsoft its actual damages in an amount to

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 7
281/571483.07
062507 0955/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

1  be proved at trial, including $15 million and the appropriate percentage of all

2  amounts In excess of $100 million, received by Immersion under the

3  Immersion/Sony Settlement Agreement;

4       B.     For order directing specific performance of Immersion's obligations

5  under the SLA, including but not limited to Immersion's obligation to promptly

6  provide Microsoft with full documentation of its settlement with Sony;

7       C.     For a declaratory judgment requiring Immersion to pay 25% of any

8  amount between One Hundred and One Hundred Fifty Million Dollars

9  ($100,000,000-$150,000,000) that Immersion receives from Sony in the future

10  pursuant to its Option, and 17.5% of any amount received by Immersion in the

11  future from Sony in excess of One Hundred Fifty Million Dollars ($150,000,000)

12  under the Option;

13       D.     For an award of its reasonable attorneys' fees and costs, pursuant to

14  the SLA;

15       E.     For prejudgment interest at 12% per annum as allowed under

16  Washington law; and

17       F.     For such other relief as the Court deems just and equitable under

18  the circumstances.

19       DATED this 25th day of June, 2007.

20       RIDDELL WILLIAMS P.S.

21

22       By _____

     Paul J. Kundtz, WSBA #13548

23       pkundtz@riddellwilliams.com

     Blake Marks-Dias, WSBA #28169

24       bmarksdias@riddellwilliams.com

     Wendy E. Lyon, WSBA #34461

25       wlyon@riddellwilliams.com

     Phone: (206) 624-3600; Fax: (206) 389-1708

26       Attorneys for Plaintiff Microsoft Corporation

FIRST AMENDED COMPLAINT FOR BREACH OF CONTRACT - 8
291/571483.07
062507 0955/20363.00411

Riddell Williams P.S.
1001 FOURTH AVENUE PLAZA
SUITE 4500
SEATTLE, WA 98154-1192
(206) 624-3600

# EXHIBIT 2

1  IRELL & MANELLA LLP
   Morgan Chu (70446)
2  Richard M. Birnholz (151543)
   Andrei Iancu (184973)
3  Alan J. Heinrich (212782)
   1800 Avenue of the Stars, Suite 900
4  Los Angeles, California 90067-4276
   Telephone: (310) 277-1010
5  Facsimile: (310) 203-7199

6  ATTORNEYS FOR PLAINTIFF
   IMMERSION CORPORATION
7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10                 OAKLAND DIVISION

11  IMMERSION CORPORATION,            )  Case No. C-02-0710 CW (WDB)
                                      )
12         Plaintiff,                 )
                                      )
13      vs.                           )  **NOTICE OF SATISFACTION**
                                      )  **OF FINAL JUDGMENT**
14  SONY COMPUTER ENTERTAINMENT       )
    AMERICA, INC. AND SONY COMPUTER   )
15  ENTERTAINMENT, INC.,              )
                                      )
16         Defendants.                )
                                      )
17  ─────────────────────────────────  )
                                      )
18  AND RELATED COUNTERCLAIMS         )
                                      )
19

20        TO THE HONORABLE CLAUDIA WILKEN, THE CLERK OF THE COURT, SONY

21  COMPUTER ENTERTAINMENT INC. AND SONY COMPUTER ENTERTAINMENT

22  AMERICA INC., AND THEIR ATTORNEYS OF RECORD, AND ALL INTERESTED

23  PERSONS:

24        PLEASE TAKE NOTICE THAT Defendants Sony Computer Entertainment Inc. and Sony

25  Computer Entertainment America Inc. (together "Sony") have duly and fully satisfied the

26  Amended Judgment entered by this Court on April 7, 2005 ("Amended Judgment"), now final and

27  non-appealable in light of the United States Court of Appeals for the Federal Circuit's dismissal

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

1642088

IMMERSION CORPORATION'S NOTICE OF
SATISFACTION OF JUDGMENT
Case No. C-02-0710 CW (WDB)

CONFIDENTIAL                                                                    IMRMS00000068

1  with prejudice of all Sony appeals from the Amended Judgment and all orders merged with or

2  related thereto.

3         Sony has delivered to Immersion funds in the amount of the Amended Judgment, inclusive

4  of the amount of pre-judgment interest and costs awarded, and interest thereon from the date of the

5  Amended Judgment as accrued by law.  As reflected by the signature below, Immersion

6  acknowledges that Sony has duly and fully satisfied the Amended Judgment (inclusive of pre-

7  judgment interest, costs, and interest thereon from the date of the Amended Judgment as accrued

8  by law, and court-ordered compulsory license fees) in its entirety.

9         In light of the foregoing, Immersion has no objection to the supersedeas bond dated April

10  29, 2005 [Docket No. 1696] which Sony lodged with the Clerk of Court (in the amount of

11  $102,500,000 secured by Sony's deposit of funds in that amount with the Court's Registry and

12  subsequently transferred to an Escrow Account) being released and the original returned to Sony.

13

14  Dated:  March 19, 2007

15                                      Respectfully submitted,

16                                      IRELL & MANELLA LLP

17                                      By:    /s/ Richard Birnholz
                                               Richard M. Birnholz
18                                             Attorneys for Plaintiff
                                               Immersion Corporation
19

20

21                                      IMMERSION CORPORATION

22

23                                      By:  _Victor Viegas_
                                             Victor Viegas
24                                           CEO, Immersion Corporation

25                                      IMMERSION ACKNOWLEDGES
                                        SATISFACTION OF JUDGMENT
26

27

28

IRELL & MANELLA LLP
A Registered Limited Liability
Law Partnership Including
Professional Corporations

IMMERSION CORPORATION'S NOTICE OF
SATISFACTION OF JUDGMENT
Case No. C-02-0710 CW (WDB)

CONFIDENTIAL                                                    IMRMS00000069

# EXHIBIT 3

```
<DOCUMENT>
<TYPE>EX-10.5
<SEQUENCE>5
<FILENAME>f92905a2exv10w5.txt
<DESCRIPTION>EXHIBIT 10.5
<TEXT>
<PAGE>
```

EXHIBIT 10.5


CONFIDENTIAL TREATMENT HAS BEEN REQUESTED AS TO CERTAIN PORTIONS OF THIS
EXHIBIT, WHICH PORTIONS HAVE BEEN OMITTED AND REPLACED WITH [****] AND FILED
SEPARATELY WITH THE SECURITIES AND EXCHANGE COMMISSION.

SUBLICENSE AGREEMENT

THIS SUBLICENSE AGREEMENT ("SUBLICENSE AGREEMENT") is entered into and
is effective on this 25th day of July, 2003 (the "EFFECTIVE DATE") by and
between MICROSOFT CORPORATION, a Washington corporation with principal offices
in Redmond, Washington ("MICROSOFT") and IMMERSION CORPORATION, a Delaware
corporation with principal offices in San Jose, California ("IMMERSION"), each a
"PARTY" and collectively, the "PARTIES."

RECITALS

WHEREAS, Immersion has the right to grant a license to Microsoft and
its Subsidiaries to enable Microsoft and its Subsidiaries to grant the below
described sublicenses to third parties, under certain patent rights more fully
described below; and

WHEREAS, Microsoft desires to acquire a sublicensing right under such
patent rights and Immersion desires to grant such a sublicensing right, all on
the terms and conditions set forth in this Agreement.

NOW, THEREFORE, in consideration of the mutual promises and covenants
contained herein, the Parties agree as follows:

AGREEMENT

1.      DEFINITIONS.

        a.      "ADULT PRODUCT" means: (i) [****] content, access to which may
                be lawfully provided solely to users who certify that they are
                at least 18 years of age; and (ii) media (e.g. videos, CDs and
                DVDs) containing the content described in (i), but only to the
                extent that the rights to create the content and/or media
                described in (i) and (ii) above have been licensed by
                Immersion prior to the Effective Date under the Licensed
                Patents to another party on an exclusive basis.

        b.      "CONDITIONAL PATENTS" means Patents for which the grant of
                licenses, releases, or freedom from suit to Microsoft or
                Microsoft Subsidiaries for sublicensing or passing through to
                a Sublicensee, on the terms and conditions set forth herein,
                results in an obligation to pay, or the payment of, additional
                royalties by Immersion or its Subsidiaries to third parties
                (except for payments among Immersion and its Subsidiaries, and
                payments made to third parties for inventions made by said
                third parties while employed by or under an obligation to
                assign inventions to Immersion or any of its Subsidiaries).

c.    "FOUNDRY PRODUCT" means a product which is designed by or for a third party without substantial input from the Sublicensee, and manufactured, reproduced, sold, leased, licensed or otherwise transferred from the Sublicensee to that third

1

<PAGE>

PROVIDED UNDER RULE 408

party (or to customers of, or as directed by, that third party) on essentially an exclusive basis

d.    "GAME PLATFORM" means: (i) a proprietary consumer computing platform manufactured for the purpose of running game software licensed and written for that platform; (ii) any peripheral device (such as a game pad, joystick or wheel) intended to be used with the computing platform referenced in (i) above, so as to receive input from or transmit output to the user; (iii) game software licensed and written for the computing platform referenced in (i) above; (iv) software development tools used to produce the game software described in (iii) above; and (v) network services to support online gaming activity, including, for example, player match making, data warehousing and voice and chat communications. Sony's PlayStation and Nintendo's GameCube and GameBoy platforms are examples of a Game Platform.

e.    "GAME PLATFORM VENDOR" means an entity which distributes a Game Platform under its own name.

f.    "LICENSED PATENTS" means all Patents under which Immersion or any of its present or future Subsidiaries owns or has as of the Effective Date (or as of the acquisition date in the case of future Subsidiaries), or thereafter obtains, the ability or right to grant licenses, releases or freedom from suit, with the exception of Conditional Patents.

g.    "MEDICAL PRODUCT" means any hardware product, software product, or combination of hardware and software that uses Touch Technology for the medical treatment of patients, the training of medical personnel for medical procedures, or the simulation of any medical procedure. General purpose hardware or software whose primary function is not the delivery of one of the foregoing is not a Medical Product.

h.    "PATENT" means any patent, patent application, provisional application, continuation, continuation-in-part, divisional, reissue, renewal, reexamination, utility model, design patent, and foreign counterparts thereof.

i.    "ROYALTY-BEARING SONY PRODUCTS" means:

    (i)    handheld mobile entertainment or productivity devices (e.g. a downloadable media player device or a PDA), and portable keyboards, styluses or pens (and replacement components) distributed in connection with such handheld mobile entertainment or

    productivity devices, except to the extent that such devices constitute Adult Products, Medical Products, or Foundry Products; and

(ii)    handheld mobile communications devices (e.g., a cell phone) distributed under a Sony or Sony Subsidiary brand, except to the extent that such devices constitute Adult Products, Medical Products, or Foundry Products.

A handheld device having a primary purpose of playing games shall be deemed to fall within the "Game Platform" definition and is not a Royalty-Bearing Sony Product.

2

&lt;PAGE&gt;

PROVIDED UNDER RULE 408

j.    "SONY" means Sony Corporation, Sony Computer Entertainment, Inc., Sony Computer Entertainment of America, Inc., and any and all of their Subsidiaries.

k.    "SONY LAWSUIT" means the action in the United States District Court for the Northern District of California entitled Immersion Corporation v. Sony Computer Entertainment of America, Inc., Sony Computer Entertainment Inc., and Microsoft Corporation, Northern District of California Case No. C02-00710 CW (WDB), as such action pertains to Sony.

l.    "SUBLICENSEE" means any entity to which Microsoft may grant a sublicense in accordance with this Sublicense Agreement.

m.    "SUBSIDIARY" means a corporation, company or other entity: (i) fifty percent (50%) or more of whose outstanding shares or securities (representing the right to vote for the election of directors or other managing authority) are, now or hereafter, owned or controlled, directly or indirectly, by a given entity, but such corporation, company or other entity shall be deemed to be a Subsidiary only so long as such ownership or control exists; or (ii) which does not have outstanding shares or securities, as may be the case in a partnership, joint venture or unincorporated association, but fifty percent (50%) or more of whose ownership interest representing the right to make the decisions for such corporation, company or other entity is, now or hereafter, owned or controlled, directly or indirectly, by a given entity, but such corporation, company or other entity shall be deemed to be a Subsidiary only so long as such ownership or control exists.

n.    "TOUCH TECHNOLOGY" means technology related to calculating, processing, amplifying, communicating, transmitting, controlling, applying, producing, using, or enhancing touch sensations or information related to the sense of touch (e.g., resistance, texture, force). Examples include force feedback, vibration, and tactile response applications.

2.    SUBLICENSING RIGHTS AND PAYMENTS.

a.        SUBLICENSE RIGHTS FOR GAME PLATFORM VENDORS.

   (i)      Grant of Rights. Immersion on behalf of itself and
            its Subsidiaries, hereby grants to Microsoft and its
            Subsidiaries the worldwide, irrevocable,
            non-terminable right, subject to and during the
            period set forth in Section 2(j), to sublicense Game
            Platform Vendors and their Subsidiaries under the
            Licensed Patents (excluding Patents not directed to
            Touch Technology) to:

      (1)      make, have made, use, lease, distribute,
               have distributed, publish, have published,
               import, provide as a service, offer to sell,
               sell or otherwise dispose of such Game
               Platform Vendor's and its Subsidiaries' Game
               Platforms; and

      (2)      further sublicense third party software
               developers to use such Game Platform
               Vendor's and its Subsidiaries' Game Platform
               software development tools to develop games
               solely for such Game Platforms.

                                3

<PAGE>

                     PROVIDED UNDER RULE 408

   (ii)     Delivery of Copy of Game Platform Sublicense.
            Microsoft's grant of such a sublicense to a Game
            Platform Vendor is referred to herein as a "GAME
            PLATFORM SUBLICENSE." Except as set forth in the last
            sentence of Section 2(c), Microsoft shall provide
            Immersion with a copy of the fully executed Game
            Platform Sublicense within ten (10) days after the
            Game Platform Sublicense is executed by Microsoft and
            the applicable Game Platform Vendor.

b.        COMPENSATION FOR GAME PLATFORM VENDORS [****] As Immersion's
          entire compensation with respect to each individual sublicense
          granted under Section 2(a) above to a particular Game Platform
          Vendor [****], (a) Microsoft shall pay Immersion [****] within
          ten (10) days of Microsoft's granting any such Game Platform
          Sublicense, and (b) thereafter Microsoft shall pay Immersion
          [****] of the cash amounts (if any, and including royalty
          payments and upfront, annual or other license fees) received
          by Microsoft from such Game Platform Vendor for the Game
          Platform Sublicense in excess of [****] ("ADDITIONAL
          SUBLICENSING REVENUE") within thirty (30) days of Microsoft's
          receipt of any such Additional Sublicensing Revenue.

c.        COMPENSATION FOR [****] GAME PLATFORM SUBLICENSE. In the event
          Microsoft grants [****] a Game Platform Sublicense on the
          terms set forth in Section 2(a) above, the following terms
          shall apply in place of the terms of Section 2(b). Within ten
          (10) days after Microsoft grants [****] the Game Platform
          Sublicense, Microsoft shall pay Immersion:

(i)    [****] if the Game Platform Sublicense is entered into prior to the date that is thirty (30) days prior to the then most recently [****] in the [****];

(ii)   [****] if the Game Platform Sublicense is entered into within the thirty (30) day period immediately prior to the then most recently [****] in the [****];

(iii)  [****] if the Game Platform Sublicense is entered into during the time period the [****] of the [****] is underway, but prior to the delivery of [****] for the [****] to be [****] to Immersion (if any) in the [****]; or

(iv)   the greater of [****] or the amount that is [****] of any [****] that has been [****] in the [****] if the Game Platform Sublicense is entered into after the delivery of the [****] referenced in (3) above. Microsoft shall be entitled to deduct [****] of the [****] received by Microsoft [****] for the Game Platform Sublicense from the amounts payable under this clause (4); provided that the amount payable by Microsoft under this clause (4) will in no event be less than [****].

In any of the cases described under clauses (1) - (4) above, the Parties shall each be entitled to [****] of the cash amounts (if any, and including royalty payments and upfront, annual or other license fees) received by Microsoft [****] for the Game Platform Sublicense in excess of the applicable amount specified in such clauses (1) - (4) (after implementation of the calculation specified in clause (4)). Any license grant [****] under the Game Platform Sublicense shall not become

4

<PAGE>

PROVIDED UNDER RULE 408

effective until [****] renders all compensation required under the Game Platform Sublicense to be paid [****] as of the effective date of such Game Platform Sublicense. At the time of making payment to Immersion for [****] Game Platform Sublicense, Microsoft shall also provide Immersion with a fully executed copy of the [****] Game Platform Sublicense.

d.    MICROSOFT'S RIGHT TO SUBLICENSE [****] FOR ADDITIONAL [****]. Immersion on behalf of itself and its Subsidiaries, hereby grants to Microsoft and its Subsidiaries the worldwide, irrevocable, non-terminable right, subject to and during the period set forth in Section 2(j), to sublicense [****] under the Licensed Patents (excluding Patents not directed to Touch Technology) to make, have made, use, offer to sell and sell or otherwise distribute Royalty-Bearing Sony Products, subject to the royalty obligations set forth in Exhibit A. In the event Microsoft and [****] execute an agreement for such a sublicense, Immersion shall pay Microsoft [****] within ten (10) days after the execution thereof. Within ten (10) days

after execution of any sublicense under this Section 2(d), Microsoft shall provide a fully executed copy thereof to Immersion.

e.   PAYMENTS TO MICROSOFT IN THE EVENT IMMERSION [****] PRIOR TO MICROSOFT GRANTING [****] A GAME PLATFORM SUBLICENSE. In the event Immersion elects in its discretion to [****] prior to Microsoft's granting [****] the Game Platform Sublicense (and regardless of whether such [****] occurs during or after the twenty-four (24) month period following the Effective Date), then Immersion shall pay Microsoft an amount determined as follows:

   (i)    If Immersion [****] for an amount of [****] up to and including [****], then Immersion shall pay Microsoft the sum of [****].

   (ii)   If Immersion [****] for an amount in excess of [****] up to and including [****], then Immersion shall pay Microsoft the sum of [****] plus an additional amount equal to 25% of the amount of the settlement in excess of [****] up to and including [****].

   (iii)  If Immersion [****] for an amount in excess of [****], then Immersion shall pay Microsoft the sum specified in the preceding clause (3) plus an additional amount equal to [****] of the amount of the settlement in excess of [****].

The [****] amounts specified in clauses (i) - (iii) above shall include all amounts, including all royalty payments and upfront, annual or other license fees (regardless of when received), received by Immersion on account of any license, [****], or similar consideration granted by Immersion to [****] in respect of the Licensed Patents, including for fields of use outside of the area of Game Platforms, and (a) in connection with the [****], including any agreement, license, sublicense, option, investment, or other transaction associated with [****], and (b) with respect to any other agreement, license, sublicense, option, investment, or other transaction entered into during the time period that is the lesser of (1) the period set forth in Section 2(j), or (2) eighteen (18) months after [****]. Any amounts due under this Section 2(e) shall be paid to Microsoft within ten (10) days of Immersion's [****]. Immersion further agrees to

5

<PAGE>

PROVIDED UNDER RULE 408

promptly provide Microsoft with sufficient documentation of [****] to enable Microsoft to determine and confirm the payment owed to Microsoft in the event of such a [****].

f.   [****]. Within five (5) days after Microsoft grants [****] a Game Platform Sublicense and pays Immersion the amount due under Section 2(c), Immersion, for no additional consideration or payment whatsoever (whether from Microsoft or [****]) will:

(i) [****]; and (ii) [****] licensees, distributors, and customers, direct and indirect, from any [****] or could have [****]. The Immersion obligations set forth in the foregoing sentence shall be contingent on [****] (for no additional consideration or payment whatsoever from Immersion) [****] or that could have been [****] or based on or [****].

g.   SUBLICENSING REVENUE FROM SONY/ERICSSON JOINT VENTURE. If, during the period set forth in Section 2(j), Immersion grants a third party the right to grant licenses for the equivalent of Royalty-Bearing Sony Products to Sony - Ericsson Mobile Communications, Microsoft shall be entitled to receive [****] of all amounts received on account of the grant of such rights, including all royalty payments and upfront, annual or other license fees (regardless of when received). All such amounts shall be paid to Microsoft no than thirty (30) days after receipt by Immersion. In the event that Sony acquires majority ownership of Sony - Ericsson Mobile Communications, the aforementioned percentage shall be increased to [****].

h.   CONDITIONAL PATENTS. Immersion on behalf of itself and its Subsidiaries, agrees that upon written request, it will grant to Microsoft and Microsoft Subsidiaries to the broadest extent and under the most favorable terms and conditions (including the most favorable royalty terms) which Immersion then has the ability or right to do, a license, release and covenant with respect to any Conditional Patents under the terms, conditions, licenses and covenants granted herein, (i.e. of such scope as to permit the sublicense of such Conditional Patents on the terms set forth herein). Such license, release and covenant shall be granted under a separate agreement upon payment to Immersion of the additional royalty or other consideration which Immersion or any of its Subsidiaries is obligated to pay to a third party because of the grant of such license, release or covenant thereunder. In the event that Immersion's obligation to pay a particular licensor is based on a percentage of Immersion's sublicensing revenues from such Conditional Patents, Microsoft and Immersion agree to negotiate a reasonable payment based on the fair market value of the sublicense of such Conditional Patents. If Immersion sublicenses such Conditional Patents to other parties, the fair market value shall be no more than the best terms that Immersion grants or has granted to other sub-licensees for the same or similar sublicense.

i.   OWNERSHIP. Except as expressly licensed to Microsoft in this Sublicense Agreement, Immersion retains all right, title and interest in and to the Licensed Patents. Immersion reserves all rights not expressly granted in this Sublicense Agreement.

6

<PAGE>

PROVIDED UNDER RULE 408

j.   LIMITATION. Microsoft's right to grant sublicenses to [****] or other third parties pursuant to this Section 2 shall only be effective during the twenty-four (24) month period following the Effective Date; provided, however, that any such

sublicense granted by Microsoft pursuant to this Section 2 during such twenty-four (24) month period shall be effective for the life of the Licensed Patents or for such lesser duration as Microsoft and the applicable sublicensee may agree, in their sole discretion.

3.    PAYMENT. Within five (5) days after the Effective Date, Microsoft shall pay Immersion by cashier's check, wire transfer or other immediately available funds, one hundred thousand dollars (USD $100,000), in consideration of the rights and covenants set forth herein. The payment referenced in this Section 3 is in addition to any payments that Microsoft may be obligated to make to Immersion under Sections 2(b), 2(c) or 2(h) of this Sublicense Agreement.

4.    CONFIDENTIALITY. The terms, conditions, and existence of this Sublicense Agreement shall be treated as confidential information by the Parties, and neither Party shall disclose the existence, terms or conditions of this Sublicense Agreement to any third party (other than, in the case of Microsoft, to [****] and to any other Game Platform Vendor entering into a Game Platform Sublicense) without the prior written permission of the other Party. Each Party, however, shall have the right to make disclosures to the extent required by an order of court, regulation of another governmental body, or otherwise by law or by a stock exchange, provided that the Party shall promptly provide written notice to the non-disclosing Party of the intended disclosure and of the court order or regulation prior to such disclosure and that the Party shall take all reasonable steps to minimize such disclosure by, for example, obtaining a protective order and/or appropriate confidentiality provisions requiring that such information to be disclosed be used only for the purpose for which such law, order, regulation or requirement was issued. Additionally, (i) each Party may disclose the terms and conditions of this Sublicense Agreement to the extent reasonably necessary, under a suitable confidentiality agreement, to its accountants, attorneys, financial advisors and in connection with due diligence activities relating to the sale of the stock or a portion of the business of a Party or its Subsidiaries, and (ii) Immersion shall be permitted to disclose to [****] and any other Game Platform Vendor entering into a Game Platform Sublicense the permitted scope of Microsoft's sublicense rights under this Sublicense Agreement, provided that Immersion gives Microsoft notice of such proposed disclosure and Microsoft does not respond within thirty (30) days after such notice.

5.    WARRANTIES.

    a.    IMMERSION. Immersion represents, warrants, and covenants that:

        (i)    it has the full power and has taken the necessary and appropriate steps to enter into this Sublicense Agreement and assume the obligations hereunder;

        (ii)   it has the right to license the Licensed Patents, and it has the full power and has taken the necessary and appropriate steps to enter into this Sublicense Agreement and assume the obligations hereunder, and to grant the license rights and covenants set forth herein;

7

<PAGE>

PROVIDED UNDER RULE 408

(iii)  it has not previously and will not grant any rights in the Licensed Patents to any third party that are inconsistent with the rights granted to Microsoft herein;

(iv)  it has not previously and will not grant during the period set forth in Section 2(j) to any third party the right to grant [****] the sublicense rights granted in Sections 2(a) herein;

(v)  it has not assigned or otherwise transferred or subrogated any interest in any of its claims that are the subject of the Sony Lawsuit, and, except in connection with an assignment by Immersion permitted by Section 8(d), will not assign or otherwise transfer or subrogate any interest (other than in the proceeds) in any of its claims that are the subject of the Sony Lawsuit;

(vi)  [****];

(vii)  as of the Effective Date, the issued Licensed Patents owned by Immersion are subsisting and have not lapsed or otherwise become abandoned;

(viii)  as of the Effective Date, there are no actual or threatened lawsuits or claims relating to the Licensed Patents other than the action in the United States District Court for the Northern District of California entitled Immersion Corporation v. Sony Computer Entertainment of America, Inc., Sony Computer Entertainment Inc., and Microsoft Corporation, Northern District of California Case No. C02-00710 CW (WDB), contract, business or licensing discussions with existing or potential licensees and customers, and as set forth in Schedule 3.12 to the Series A Redeemable Convertible Preferred Stock Purchase Agreement executed by the Parties on even date herewith; and

(ix)  as of the Effective Date, Immersion believes, in good faith, that the issued Licensed Patents owned by Immersion are valid and enforceable.

b.  BY MICROSOFT. Microsoft represents, warrants, and covenants that it has the full power and has taken the necessary and appropriate steps to enter into this Sublicense Agreement and assume the obligations hereunder.

c.  DISCLAIMER. EXCEPT AS EXPRESSLY PROVIDED IN SECTIONS 5(a) AND 5(b) ABOVE, THE PATENTS ARE PROVIDED "AS IS" AND WITHOUT WARRANTY OF ANY KIND. EACH PARTY DISCLAIMS ALL IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, OR NON-INFRINGEMENT.

Nothing in this Sublicense Agreement shall be construed (i) as

a warranty or representation by Immersion as to the validity
or scope of any Licensed Patents; (ii) as a warranty or
representation that anything made, used, sold or otherwise
disposed of under any license or sublicense granted in or
under this Sublicense Agreement is or will be free from
infringement by patents, copyrights, trade secrets,
trademarks, or other rights of third parties; (iii) as
granting by implication, estoppel or otherwise any licenses or
rights under patents or other intellectual property rights of
Immersion other than expressly granted herein; or (iv)(a) to
require Immersion to file any patent application, (b) as a
warranty that Immersion

8

<PAGE>

PROVIDED UNDER RULE 408

will be successful in securing the grant of any patent or any
reissue or extensions thereof, or (c) to require Immersion to
pay any maintenance fees or take any other steps to maintain
Immersion's patent rights. Immersion does not assume any
responsibility for the manufacture of any product that is
manufactured or sold by or for Microsoft or Microsoft's
Subsidiaries, or their sublicensees. All warranties in
connection with such products shall be made by the
manufacturer or seller of such products.

6.      TERM; TERMINATION.

        a.      TERM. Unless terminated by Microsoft pursuant to Section 6(b),
                the term of this Sublicense Agreement shall be from the
                Effective Date until the expiration of the last to expire of
                the Licensed Patents.

        b.      TERMINATION. The parties expressly agree that this Sublicense
                Agreement may not be terminated by Immersion, even in the
                event of Microsoft's breach of this Sublicense Agreement.
                Notwithstanding the foregoing, Microsoft may terminate this
                Sublicense Agreement in its sole discretion and at any time
                upon thirty (30) days' written notice in advance to Immersion.
                In the event Microsoft elects to terminate this Sublicense
                Agreement, (i) such termination shall not terminate or
                otherwise affect any sublicenses granted by Microsoft under
                this Sublicense Agreement prior to such termination, and (ii)
                Sections 4, 5, 6(b), 7, 8, and 9 shall survive. Termination of
                this Sublicense Agreement by Microsoft shall not in any way
                affect or relieve either of the Parties of the payment
                obligations set forth in Sections 2(b), 2(c), 2(d) and 2(h) of
                this Sublicense Agreement.

7.      LIMITATION OF LIABILITIES.

NEITHER PARTY WILL BE LIABLE FOR ANY INDIRECT, INCIDENTAL, CONSEQUENTIAL,
PUNITIVE OR SPECIAL DAMAGES RELATING TO THIS SUBLICENSE AGREEMENT, EVEN IF SUCH
PARTY HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

9

<PAGE>

PROVIDED UNDER RULE 408

8.    GENERAL.

a.    NOTICES. All notices and requests in connection with this
Sublicense Agreement will be given in writing and will be
deemed given as of the day they are received either by
messenger, delivery service, or in the mails of the United
States of America, postage prepaid, certified or registered,
return receipt requested, and addressed as follows:

TO: MICROSOFT                          TO: IMMERSION
Microsoft Corporation                  Immersion Corporation
Attention: Vice President, Intellectual  Attention: Vice President,
Property                               Legal Affairs
One Microsoft Way                      801 Fox Lane
Redmond, Washington 98052-6399         San Jose, California 95131
Phone: (425) 882-8080                  Phone: (408) 467-1900
Fax: (425) 936-7329                    Fax: (408) 467-1901
Copy to: Vice President, Litigation
Fax: (425) 936-7409

or to such other address as the Party to receive the notice or
request so designates by written notice to the other.

b.    INDEPENDENT CONTRACTORS. The Parties are independent
contractors, and nothing in this Sublicense Agreement will be
construed as creating an employer-employee relationship, a
partnership, or a joint venture between the Parties. Neither
Party will have the power to bind the other Party or incur
obligations on the other Party's behalf without the other
Party's prior written consent.

c.    DISPUTE RESOLUTION. This Sublicense Agreement shall be
construed and controlled by the laws of the State of
Washington, and each Party consents to exclusive jurisdiction
and venue in the federal courts sitting in King County,
Washington, unless no federal subject matter jurisdiction
exists, in which case each Party consents to exclusive
jurisdiction and venue in the Superior Court of King County,
Washington. Each Party waives all defenses of lack of personal
jurisdiction and forum non-conveniens. Process may be served
on either Party in the manner authorized by applicable law or
court rule. In any action to enforce any right or remedy under
this Sublicense Agreement or to interpret any provision of
this Sublicense Agreement, the prevailing Party shall be
entitled to recover its reasonable attorneys' fees, costs and
other expenses.

d.    ASSIGNMENT. This Sublicense Agreement will be binding upon and
inure to the benefit of each Party's respective successors and
lawful assigns. Microsoft will have the right to assign this
Sublicense Agreement or any or all of its rights under this
Sublicense Agreement, in whole or in part (in any case
together with all restrictive terms continuing with such
assignment) to any purchaser of any Microsoft business that
grants the sublicenses authorized herein; provided, that
Microsoft may not make any such assignment to Sony

Corporation, Sony Computer Entertainment, Inc., Sony Computer
Entertainment of America, Inc., Nintendo, Inc., or any of
their Subsidiaries or successors. This Sublicense

10

<PAGE>

PROVIDED UNDER RULE 408

Agreement may be assigned by Immersion to any acquiror of all
or substantially all of the business or assets of Immersion,
or in connection with a merger. Microsoft and Immersion will
each have the right to merge or consolidate without the prior
approval of the other Party. Except as permitted above,
assignment of this Sublicense Agreement, whether by contract,
operation of law, or otherwise, will be void.

e.      CONSTRUCTION. If for any reason a court of competent
        jurisdiction finds any provision of this Sublicense Agreement,
        or portion thereof, to be unenforceable, that provision of the
        Sublicense Agreement will be enforced to the maximum extent
        permissible so as to effect the intention of the Parties, and
        the remainder of this Sublicense Agreement will continue in
        full force and effect. Failure by either Party to enforce any
        provision of this Sublicense Agreement will not be deemed a
        waiver of future enforcement of that or any other provision.
        This Sublicense Agreement has been negotiated by the Parties
        and their respective counsel and will be interpreted fairly in
        accordance with its terms and without any strict construction
        in favor of or against either Party.

f.      ENTIRE AGREEMENT. This Sublicense Agreement constitutes the
        entire agreement between the Parties with respect to the
        subject matter hereof and merges all prior and contemporaneous
        communications regarding the subject matter hereof. This
        Sublicense Agreement will not be modified except by a written
        agreement dated subsequent to the Effective Date and signed on
        behalf of Immersion and Microsoft by their respective duly
        authorized representatives. This Sublicense Agreement may be
        executed in any number of counterparts, each of which when so
        executed shall be deemed to be an original, and all of which
        taken together shall constitute one and the Sublicense
        Agreement. Delivery of an executed counterpart of this
        Sublicense Agreement by facsimile transmission shall be
        effective as delivery of an originally executed counterpart of
        this Sublicense Agreement.

        [Remainder of page intentionally left blank]

11

<PAGE>

SIGNATURE PAGE TO THE
GAME CONSOLE SUBLICENSE AGREEMENT

    IN WITNESS WHEREOF, the Parties have entered into this Sublicense
Agreement as of the Effective Date written above.

IMMERSION CORPORATION

By: _____
    VICTOR VIEGAS
    President, Chief Executive Officer and
    Chief Financial Officer

MICROSOFT CORPORATION

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

By: _____
    Name:
    Title:

<PAGE>

CONFIDENTIAL TREATMENT REQUESTED – EDITED COPY

EXHIBIT A

ROYALTIES FOR ROYALTY-BEARING SONY PRODUCTS

1.      In the event Microsoft grants [****] the additional license rights
        referenced in Section 2(d), Microsoft shall arrange for [****] to pay
        royalties directly to Immersion as described below.

        a.      The royalty applicable to each unit of a given type of
                Royalty-Bearing Sony Product that is licensed, sold, or
                otherwise distributed or disposed of by any entity licensed
                under the sublicense granted pursuant to Section 2(d) of the
                Sublicense Agreement (a "UNIT") shall be the greater of:

                (i)     [****] per Unit; or

                (ii)    [****] of the wholesale cost of production
                        of such Unit.

        b.      Alternatively, at [****] option, in the event that Immersion
                has entered into an agreement with a party other than [****]
                (excluding (i) the License Agreement entered into by Microsoft
                and Immersion simultaneously with the execution of this
                Agreement, (ii) any other agreement with a third party in
                connection with the [****]; and (iii) any agreement under
                which Immersion receives a license or [****] from such third
                party) (a "THIRD PARTY AGREEMENT") in which Immersion grants
                such third party rights under the Licensed Patents of
                equivalent scope to the rights sublicensed to [****] under
                Section 2(d), if, taken as a whole, the terms of such Third
                Party Agreement are more favorable than the terms of the

agreement entered into by [****] and Microsoft pursuant to Section 2(d) ("SECTION 2(d) AGREEMENT"), [****] may elect that all material terms of such Third Party Agreement shall apply to [****] in place of the Section 2(d) Agreement. In the event of such an election by [****] and Microsoft shall terminate the Section 2(d) Agreement, and Immersion and [****] will enter into an agreement containing all such material terms of such Third Party Agreement.

2.    Except as otherwise agreed by [****] and Immersion, royalties payable for Units shall be paid within 30 days after the end of the calendar quarter in which [****] receives revenue for such Unit and to a bank account designated by Immersion.

3.    Portable keyboards, styluses or pens bundled with handheld mobile entertainment or productivity devices shall not bear a separate royalty; the only royalty payable shall be on the underlying handheld mobile entertainment or productivity devices with which such portable keyboards, styluses or pens are intended to be used.

</TEXT>
</DOCUMENT>

# EXHIBIT 4

**The New York Times**
nytimes.com

---

April 12, 2004

# TECHNOLOGY; Microsoft Settles InterTrust Suit For $440 Million

**By STEVE LOHR**

Microsoft plans to announce today that it has reached a $440 million legal settlement and licensing deal with the InterTrust Technologies Corporation, a private company and a pioneer in the development of software to protect digital music and movies from piracy.

The settlement of InterTrust's patent infringement suit, filed in 2001, is the latest in Microsoft's continuing drive to resolve its legal disputes. It comes less than two weeks after the company, the world's largest software maker, agreed to pay Sun Microsystems $1.6 billion to settle Sun's private antitrust suit against Microsoft and to resolve patent claims.

The InterTrust settlement removes a threat to Microsoft's ability to deliver piracy protection technology in its software products for playing and handling digital media. The technology for so-called digital rights management, analysts say, is crucial for Microsoft's plans to extend its Windows software into the emerging market for legally distributing music and movies over the Internet, in competition with rivals like Apple, RealNetworks, Sony and others.

Last week, Microsoft and Time Warner announced that they had acquired a majority stake in another developer of digital rights management technology, ContentGuard, a small company spun out of the Xerox Palo Alto Research Center. The terms of the purchase were not disclosed.

"The InterTrust agreement and the ContentGuard investment hold the promise of really spurring the availability of digital rights management in the marketplace," said David Kaefer, a director of business development for Microsoft's intellectual property and licensing group.

InterTrust sued Microsoft three years ago after making the accusation that technology that it had shown Microsoft in discussions of a licensing deal started appearing in Microsoft products.

Microsoft, based in Redmond, Wash., had consistently denied the accusations. But the company shifted tactics last summer, when settlement negotiations began. "We took a look at this, and InterTrust had early patents that we would have to license," Mr. Kaefer said.

The settlement gives InterTrust a big paycheck and sharply improves its prospects. The company, based in Santa Clara, Calif., was founded in 1990 and went public in 1999 with hopes of making its digital rights management software a standard for media distributed over the Internet. But media companies moved slowly in the new market and focused largely on taking legal action against file sharing.

InterTrust struggled, laid off most of its workers and shifted to a new business model of licensing its

technology rather than trying to become a software company. Still, its technology was highly regarded. An investment group including Sony and Philips Electronics bought InterTrust for $453 million in a deal that closed in January 2003.

"This is a home run for us," said Talal Shamoon, chief executive of InterTrust. "It is a validation of our patent portfolio and opens up new licensing opportunities for us."

The settlement covers Microsoft and consumers who use Microsoft software. But media companies and software developers that make new commercial products or services that run on Microsoft's Windows operating system may well have to seek a license from InterTrust, Mr. Shamoon said.

The big question is how standards for management of digital rights will develop. Apple, with its iPod music player and iTunes online music store, is the leader in an approach long favored by the consumer electronics industry: one company controlling the software and hardware. The model from the personal computer industry centers on software, with a dominant operating system housing the crucial technology.

Mr. Shamoon says the digital rights management market should develop more as the Internet has done. Media companies like Time Warner, Universal and Sony want to control their own digital rights technology, he said. Above the digital rights layer, Mr. Shamoon said, should be another layer of software that allows people to listen to music, for example, on many different devices.

"That second layer will allow all the devices and services to interoperate seamlessly," Mr. Shamoon said. "That is what opens the door to what the consumer really wants: a universal play button. The consumer just wants to hit the play button. That's what our industry should be working toward."

---

Copyright 2008 The New York Times Company  |  Home  |  Privacy Policy  |  Search  |  Corrections  |  **XML**  |  Help  |  Con

# EXHIBIT 5

AO88 (Rev. 12/06) Subpoena in a Civil Case

## Issued by the

# UNITED STATES DISTRICT COURT

### DISTRICT OF COLUMBIA

MICROSOFT CORPORATION, a Washington corp.,

v.

IMMERSION CORPORATION, a Delaware corp.

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]    CV07 936RSM

TO:    Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
c/o Kara F. Stoll
901 New York Avenue, N.W.
Washington, D.C. 20001

☐   YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
|  | DATE AND TIME |

☐   YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|

☑   YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

| PLACE       901 New York Avenue, N.W., Washington, D.C. 20001. | DATE AND TIME     3/24/2008 10:00 am |
|---|---|

☐   YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify.  Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT)     _, Esq.  Attorney for Defendant | DATE     2/22/2008 |
|---|---|

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER
David R. Kaplan, IRELL & MANELLA LLP, 1800 Avenue of the Stars, Suite 900, Los Angeles, CA  90067-4276
(310) 277-1010

(See Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), on next page)

[1] If action is pending in district other than district of issuance, state district under case number.

AO88  (Rev.  12/06) Subpoena in a Civil Case

## PROOF OF SERVICE

| | DATE | PLACE |
|---|---|---|
| SERVED | | |

| SERVED ON (PRINT NAME) | MANNER OF SERVICE |
|---|---|
| | |

| SERVED BY (PRINT NAME) | TITLE |
|---|---|
| | |

## DECLARATION OF SERVER

I declare under penalty of perjury under the laws of the United States of America that the foregoing information contained in the Proof of Service is true and correct.

Executed on _____

| DATE | SIGNATURE OF SERVER |
|---|---|
| | |
| | ADDRESS OF SERVER |

---

Rule 45, Federal Rules of Civil Procedure, Subdivisions (c), (d), and (e), as amended on December 1, 2006:

(c) PROTECTION OF PERSONS SUBJECT TO SUBPOENAS.

(1) A party or an attorney responsible for the issuance and service of a subpoena shall take reasonable steps to avoid imposing undue burden or expense on a person subject to that subpoena. The court on behalf of which the subpoena was issued shall enforce this duty and impose upon the party or attorney in breach of this duty an appropriate sanction, which may include, but is not limited to, lost earnings and a reasonable attorney's fee.

(2) (A) A person commanded to produce and permit inspection, copying, testing, or sampling of designated electronically stored information, books, papers, documents or tangible things, or inspection of premises need not appear in person at the place of production or inspection unless commanded to appear for deposition, hearing or trial.

(B) Subject to paragraph (d)(2) of this rule, a person commanded to produce and permit inspection, copying, testing, or sampling may, within 14 days after service of the subpoena or before the time specified for compliance if such time is less than 14 days after service, serve upon the party or attorney designated in the subpoena written objection to producing any or all of the designated materials or inspection of the premises — or to producing electronically stored information in the form or forms requested. If objection is made, the party serving the subpoena shall not be entitled to inspect, copy, test, or sample the materials or inspect the premises except pursuant to an order of the court by which the subpoena was issued. If objection has been made, the party serving the subpoena may, upon notice to the person commanded to produce, move at any time for an order to compel the production, inspection, copying, testing, or sampling. Such an order to compel shall protect any person who is not a party or an officer of a party from significant expense resulting from the inspection, copying, testing, or sampling commanded.

(3) (A) On timely motion, the court by which a subpoena was issued shall quash or modify the subpoena if it

(i) fails to allow reasonable time for compliance;

(ii) requires a person who is not a party or an officer of a party to travel to a place more than 100 miles from the place where that person resides, is employed or regularly transacts business in person, except that, subject to the provisions of clause (c)(3)(B)(iii) of this rule, such a person may in order to attend trial be commanded to travel from any such place within the state in which the trial is held;

(iii) requires disclosure of privileged or other protected matter and no exception or waiver applies; or

(iv) subjects a person to undue burden.

(B) If a subpoena

(i) requires disclosure of a trade secret or other confidential research, development, or commercial information, or

(ii) requires disclosure of an unretained expert's opinion or information not describing specific events or occurrences in dispute and resulting from the expert's study made not at the request of any party, or

(iii) requires a person who is not a party or an officer of a party to incur substantial expense to travel more than 100 miles to attend trial, the court may, to protect a person subject

to or affected by the subpoena, quash or modify the subpoena or, if the party in whose behalf the subpoena is issued shows a substantial need for the testimony or material that cannot be otherwise met without undue hardship and assures that the person to whom the subpoena is addressed will be reasonably compensated, the court may order appearance or production only upon specified conditions.

(d) DUTIES IN RESPONDING TO SUBPOENA.

(1) (A) A person responding to a subpoena to produce documents shall produce them as they are kept in the usual course of business or shall organize and label them to correspond with the categories in the demand.

(B) If a subpoena does not specify the form or forms for producing electronically stored information, a person responding to a subpoena must produce the information in a form or forms in which the person ordinarily maintains it or in a form or forms that are reasonably usable.

(C) A person responding to a subpoena need not produce the same electronically stored information in more than one form.

(D) A person responding to a subpoena need not provide discovery of electronically stored information from sources that the person identifies as not reasonably accessible because of undue burden or cost.  On motion to compel discovery or to quash, the person from whom discovery is sought must show that the information sought is not reasonably accessible because of undue burden or cost.  If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C).  The court may specify conditions for the discovery.

(2) (A) When information subject to a subpoena is withheld on a claim that it is privileged or subject to protection as trial-preparation materials, the claim shall be made expressly and shall be supported by a description of the nature of the documents, communications, or things not produced that is sufficient to enable the demanding party to contest the claim.

(B) If information is produced in response to a subpoena that is subject to a claim of privilege or of protection as trial-preparation material, the person making the claim may notify any party that received the information of the claim and the basis for it.  After being notified, a party must promptly return, sequester, or destroy the specified information and any copies it has and may not use or disclose the information until the claim is resolved. A receiving party may promptly present the information to the court under seal for a determination of the claim. If the receiving party disclosed the information before being notified, it must take reasonable steps to retrieve it.  The person who produced the information must preserve the information until the claim is resolved.

(e) CONTEMPT. Failure of any person without adequate excuse to obey a subpoena served upon that person may be deemed a contempt of the court from which the subpoena issued. An adequate cause for failure to obey exists when a subpoena purports to require a nonparty to attend or produce at a place not within the limits provided by clause (ii) of subparagraph (c)(3)(A).

## EXHIBIT A

## DEFINITIONS AND INSTRUCTIONS

Unless otherwise defined herein the following terms shall have the following meanings:

1.    The term "Sony" refers to Sony Computer Entertainment America, Inc. and/or Sony Computer Entertainment, Inc., including all of their corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present attorneys, directors, officers, agents, representatives, employees, consultants, entities acting in joint-venture or partnership relationships with Sony Computer Entertainment America, Inc. or Sony Computer Entertainment, Inc., and others acting on behalf of Sony Computer Entertainment America, Inc. or Sony Computer Entertainment, Inc.

2.    The term "Microsoft" means Microsoft Corporation, as well as any entity controlled by Microsoft Corporation, including all of its corporate locations, and all predecessors, subsidiaries, parents, and affiliates, and all past or present attorneys, directors, officers, agents, representatives, employees, consultants, entities acting in joint-venture or partnership relationships with Microsoft Corporation and others acting on behalf of Microsoft Corporation.

3.    The term "Immersion" means Immersion Corporation, including all predecessors, successors, subsidiaries, parents, and affiliates, and all past or present directors, officers, agents, representatives, employees, consultants, attorneys, entities acting in joint-venture or partnership relationships with Immersion Corporation and others acting on behalf of Immersion Corporation.

4.    The term "Sublicense Agreement" refers to the Sublicense Agreement entered into and effective as of July 25, 2003 between Immersion and Microsoft.

1826189

5.    The term "Sony Lawsuit" shall mean the action in the United States District
Court for the Northern District of California entitled *Immersion Corporation
v. Sony Computer Entertainment of America, Inc., Sony Computer
Entertainment Inc., and Microsoft Corporation*, Northern District of
California Case No. C02-00710-CW, as such action pertains to Sony.

6.    The terms "document" or "documents" are used herein in their customary
broad sense, and mean any kind of printed, recorded, written, graphic, or
photographic matter (including tape recordings), however printed, produced,
reproduced, coded or stored, of any kind or description, whether sent or
received or not, including originals, copies, drafts, and both sides thereof, and
including papers, books, charts, graphs, photographs, drawings,
correspondence, telegrams, cables, telex messages, memoranda, notes,
notations, work papers, routing slips, intra- and inter-office communications,
electronic mail, affidavits, statements, opinions, court pleadings, reports,
indices, studies, analyses, forecasts, evaluations, contracts, computer
printouts, data processing input and output, computer programs, microfilms,
microfiche, all other records kept by electronic, photographic, or mechanical
means, and things similar to any of the foregoing, regardless of their author
or origin, or any kind.

7.    As used herein, every nonidentical copy (*i.e.*, any "document" initially
identical in all respects to another "document," which is no longer identical
by virtue of any notation or modification of any kind including, without
limitation, notes or modifications anywhere on the document including the
backs or margins of pages, the attachment of other document including those
made on "Post-Its" or their equivalent) of a "document" is a separate
"document" and must be produced in response to this request.

8.    Nouns, whether singular or plural herein, shall be construed either as singular or plural as necessary to bring within the scope of these requests any documents or responses which might otherwise be construed to be outside their scope.

9.    The phrases "related to" or "relating to" mean refer to, concern, mention, reflect, summarize, evidence, involve, describe, discuss, respond to, support, contradict, constitute, or comment on, in whole or in part.

10.    The term "including" means "including without limitation," as appropriate, so as to bring within the scope of the discovery request all responses that might otherwise be construed to be outside of its scope. The term "all" means "any and all," as appropriate.

11.    If any documents or things requested are no longer in existence, state for each document or thing: (a) the type of document or thing; (b) the type of information contained; (c) the date on which it ceased to exist; (d) the circumstances under which it ceased to exist; (e) the identity of all persons having knowledge of the circumstances under which it ceased to exist; and (f) the identity of all persons having knowledge of its contents.

12.    If a request calls for the production of a document as to which you claim any privilege or any other ground for withholding or otherwise failing to produce the document, Immersion requests that you provide, at the time at which the other documents are produced, a log that, separately for each document withheld, sets forth: (a) the identity of the author/signatory and the parties thereto; (b) the address of the author/signatory; (c) the identity of any natural person who assisted in preparation of the document; (d) the title of the document or other identifying data sufficient to describe the document for purposes of a subpoena *duces tecum*; (e) the date of the document, or, if no date appears thereon, the approximate date; (f) the identity of each person to

whom the document, or any copy thereof, was transmitted, shown or disclosed by any person; (g) the identity and location of each person having or last having possession, care, custody or control of the original and each of any copies thereof; (h) the purpose for which the document was prepared; (i) the non-privileged contents of the document, if any portion thereof is not subject to a claim of privilege; (j) the privilege or protection that is claimed to preclude disclosure; (k) any additional facts upon which you base your claim of privilege or protection in such detail as would be required for Immersion to test the claim of privilege or protection in a motion to compel production of the document.

13.    All documents should be produced in the same order as they are kept or maintained in the ordinary course of business or should be produced in an organized manner on a request by request basis.

14.    In producing the documents and writings requested herein, please produce them in their original file folders, if any, or in lieu thereof, attach to the set of documents produced from a given file a photostatic or electrostatic duplicate of all written or printed material on the original file folder.  In addition, the documents shall be produced in the same sequence as they are contained or found in the original file folder.  The integrity and internal sequence of the requested documents within each file folder shall not be disturbed.  Under no circumstances shall documents from any file folder be commingled with documents from any other file folder.

## DOCUMENTS TO BE PRODUCED

## REQUEST FOR PRODUCTION NO. 1:

All documents relating to the Sublicense Agreement.

**REQUEST FOR PRODUCTION NO. 2:**

All documents constituting or relating to communications between Sony and Microsoft relating to the Sublicense Agreement.

**REQUEST FOR PRODUCTION NO. 3:**

All documents constituting or relating to communications between Sony and Microsoft after July 25, 2003 relating to Immersion and/or the Sony Lawsuit

**REQUEST FOR PRODUCTION NO. 4:**

All documents relating to discussions or negotiations between Microsoft and Sony relating to the Sublicense Agreement.

**REQUEST FOR PRODUCTION NO. 5:**

All documents relating to negotiations between Sony and Microsoft relating to a potential sublicense under any patent owned or held by Immersion, including drafts of any sublicense or other agreement between Sony and Microsoft and related communications.

**REQUEST FOR PRODUCTION NO. 6:**

All documents constituting or relating to communications between Sony and Microsoft relating to a potential sublicense under any patent owned or held by Immersion.

**REQUEST FOR PRODUCTION NO. 7:**

All documents relating to efforts by Microsoft to grant Sony a sublicense to any patent owned or held by Immersion.

**REQUEST FOR PRODUCTION NO. 8:**

All documents relating to efforts by Sony to obtain from Microsoft a sublicense to any patent owned or held by Immersion.

| | |
|---|---|
| *Attorney or Party without Attorney:*<br>DAVID R. KAPLAN<br>IRELL & MANELLA LLP<br>1800 AVENUE OF THE STARS<br>SUITE 900<br>Century City, CA 90067<br>*Telephone No:* (310) 203-7509<br><br>*Attorney for:* Defendant | *For Court Use Only* |

| *Ref. No. or File No.:*<br>46167 |
|---|

*Insert name of Court, and Judicial District and Branch Court:*
UNITED STATES DISTRICT COURT, DISTRICT OF COLUMBIA

*Plaintiff:* MICROSOFT CORPORATION, ETC.

*Defendant:* IMMERSION CORPORATION, ETC.

| **PROOF OF SERVICE**<br>**SUBPOENA IN A CIVIL** | *Hearing Date:*<br>Mon, Mar. 24, 2008 | *Time:*<br>10:00AM | *Dept/Div:* | *Case Number:*<br>CV07 936RSM |
|---|---|---|---|---|

*1. At the time of service I was at least 18 years of age and not a party to this action.*

2. I served copies of the SUBPOENA IN A CIVIL CASE

3. a. *Party served:*        FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
   b. *Person served:*       KARA F. STOLL, AGENT FOR SERVICE.

4. *Address where the party was served:*    901 NEW YORK AVE., N.W.
                                            WASHINGTON, DC 20001

5. *I served the party:*
   a. **by personal service.** I personally delivered the documents listed in item 2 to the party or person authorized to receive service of process for the party (1) on: Mon., Feb. 25, 2008 (2) at: 2:02PM
   b. *I received this subpena for service on:*    Friday, February 22, 2008

6. *Witness fees were not demanded or paid.*

7. *Person Who Served Papers:*                     Recoverable Cost Per CCP 1033.5(a)(4)(B)
   a. WESLEY JENNINGS                d. *The Fee for Service was:*
   b. **NATIONWIDE LEGAL INC.**      e. I am: not a registered California process server
      316 W. 2ND STREET
      SUITE 705
      LOS ANGELES, CA 90012
   c. (213) 625-9100, FAX (213) 625-9111

8. *I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.*

Date: Mon, Mar. 03, 2008

*Judicial Council Form*<br>Rule 2.150.(a)&(b) Rev January 1, 2007        **PROOF OF SERVICE**<br>**SUBPOENA IN A CIVIL**        *(WESLEY JENNINGS)*        *46167.davka.1128*

# EXHIBIT 6

## Kaplan, Dave

| | |
|---|---|
| **From:** | Kaplan, David |
| **Sent:** | Friday, March 07, 2008 2:24 PM |
| **To:** | 'James.Hammond@Finnegan.com' |
| **Cc:** | Birnholz, Richard; Heinrich, Alan |
| **Subject:** | Subpoena |

Jim,

Per our call, Immersion agrees to Finnegan's request for an extension of time until March 24, 2008 in which to respond or object to Immersion's subpoena served on Finnegan on February 25, 2008.

Regards,

Dave Kaplan, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 203-7105
Fax: (310) 282-5619

1

# EXHIBIT 7

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF COLUMBIA

MICROSOFT CORPORATION,   )
            )
   Plaintiff,     )
            ) Case No.: 2:07-cv-936 (RSM)
v.           )    Western District of Washington
            )
IMMERSION CORPORATION,   )
            )
   Defendant.    )

## RESPONSES AND OBJECTIONS OF
## NON-PARTY FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER, L.L.P.
## TO SUBPOENA FROM DEFENDANT

Non-Party Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. ("FHFGD"),

pursuant to Rules 26 and 45 of the Federal Rules of Civil Procedure, hereby responds and objects

to the Subpoena from Defendant Immersion Corporation served on February 25, 2008, in this

action pending in the United States District Court for the Western District of Washington, with a

stated date of production, inspection, and/or copying of the requested documents, things, and

electronically stored information, of March 24, 2008.  FHFGD also hereby memorializes that

Defendant consented in writing that service of this response and the objections herein by

March 24, 2008, is timely, notwithstanding the time period set forth in Federal Rule of Civil

Procedure 45.

### GENERAL OBJECTIONS

  1.  FHFGD objects to the definitions, instructions, and document requests contained

in the Subpoena to the extent they seek to impose obligations that are broader than or

inconsistent with the Federal Rules of Civil Procedure and applicable local rules.

  2.  FHFGD objects to the definitions, instructions, and document requests contained

in the Subpoena to the extent they seek disclosure of documents, materials, or information

protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, immunity, or protection recognized by law. To the extent that FHFGD has the right to seek protection under the work-product immunity, it has not, and does not, waive that right. Further, FHFGD has custody of the documents in question only through representation of clients.

In addition to withholding from production entirely such documents, materials, or information protected from disclosure by the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, immunity, or protection recognized by law, FHFGD reserves the right to mask or redact from produced documents any non-responsive information irrelevant to the issues in this case, and/or with respect to which FHFGD has raised an objection herein.

Any production of attorney-client privileged or work-product protected documents or information is inadvertent and shall not constitute waiver of any privilege or protection. Any inadvertent production or disclosure of materials or information subject to the attorney-client privilege or work-product immunity shall not constitute a waiver of any other ground for objecting to discovery with respect to such document(s) or information, any other documents or information, or the subject matter thereof. Nor shall any inadvertent production or disclosure of such materials or information waive FHFGD's or its clients' right to object to the use of any such material or information in this action or a subsequent proceeding.

3.    An objection based on the attorney-client privilege, attorney work-product doctrine, or any other applicable privilege, immunity, or protection recognized by law, should not be construed as a representation that such documents, things or information exist(s) or

existed. Such an objection indicates only that the request(s) is of such a scope as to potentially embrace subject matter protected by such privilege, immunity, or other protection.

4.     To the extent that Defendant's document requests seek information from internal work-product files, FHFGD objects to providing such information and to the production or listing of these documents on a withheld document list.

5.     FHFGD objects to the definitions, instructions, and document requests contained in the Subpoena as vague, overly broad, unduly burdensome, and harassing to the extent they exceed the boundaries of discoverable information, or fail to describe the information sought with the required reasonable particularity.

6.     FHFGD objects to the definitions, instructions, and document requests contained in the Subpoena to the extent they include factual or legal misrepresentations. A response that FHFGD will produce documents, materials, or things is not to be construed as an admission of any factual or legal contention included in any such definition, instruction, and/or document request.

7.     FHFGD objects to the definitions, instructions, and document requests contained in the Subpoena as unreasonably broad, unduly burdensome, and harassing to the extent they seek confidential financial, proprietary, trade secret, or other confidential or competitively sensitive business information of FHFGD, its clients, or third parties. No such information, documents, or things will be produced, if at all, prior to entry of an appropriate Protective Order.

8.     FHFGD objects to the definitions, instructions, and document requests contained in the Subpoena to the extent they call for an admission or a legal conclusion.

9.     FHFGD objects to the definitions, instructions, and document requests contained in the Subpoena to the extent they seek to impose upon FHFGD, not a party to this litigation, an

obligation to investigate or discover information, materials or documents from third parties or services that are otherwise accessible to the Defendant, that are outside the possession, custody or control of FHFGD, or that require FHFGD to reply on behalf of entities or persons over whom FHFGD exercises no control or on whose behalf FHFGD has no authority to respond.

10.    FHFGD objects to the definitions, instructions, and document requests contained in the Subpoena to the extent they seek information that is beyond the scope of this litigation, is not relevant, or that falls outside information discoverable under Fed. R. Civ. P. Rules 26 and 30. Additionally, no showing has been made of any purported relevance of such documents or that they are reasonably calculated to lead to the discovery of admissible evidence or as to why any of the materials sought are not otherwise available through discovery from the parties to the litigation or from public records.  Furthermore, the production of any non-relevant information, whether or not in response to any document request(s), shall not constitute a waiver of a claim of irrelevancy.

11.    FHFGD objects to each request for documents to the extent it seeks documents that are already in Defendant's possession or are readily available to Defendant, for example, documents previously produced to Defendant or documents widely available through public sources without undue expense, including but not limited to the United States Patent and Trademark Office.

12.    FHFGD objects to each request for documents as unreasonably duplicative, broad, burdensome, and harassing to the extent that it requests documents, electronically stored information, and things that can be requested with much less burden from the Plaintiff in the proceeding in the United States District Court for Western District of Washington.

13.     FHFGD objects to each request to the extent it is redundant or duplicative of other requests. Each document produced in response to a request is deemed to be produced in response to every other request to which it is or may be responsive.

14.     FHFGD objects to each request to the extent it calls for the production of information, documents, or things containing no date limitation, as it is overly broad, unduly burdensome, and calling for information that is neither relevant, nor reasonably calculated to lead to the discovery of admissible evidence. FHFGD further objects to the production of any non-public document or information created either after the filing of this suit, or after any discovery cut-off date.

15.     FHFGD objects to the definition of the term "document" to the extent that it attempts to impose any obligation(s) upon FHFGD beyond those imposed by the Federal Rules of Civil Procedure.

16.     FHFGD objects to the definitions, instructions, and document requests as overbroad and unduly burdensome to the extent that they seek information that is not in FHFGD's possession, custody, or control.

17.     FHFGD objects to the definition of "Sony" to the extent that it refers to any entity other than Sony Computer Entertainment America, Inc., as overly broad, unduly burdensome, and referring to individuals or persons of whom FHFGD does not have any knowledge, information, or belief.

18.     FHFGD objects to the definition of "Microsoft" to the extent that it refers to any entity other than Microsoft Corporation, as overly broad, unduly burdensome, and referring to individuals or persons of whom FHFGD does not have any knowledge, information, or belief.

19.     FHFGD objects to the definition of "Immersion" to the extent that it refers to any entity other than Immersion Corporation, as overly broad, unduly burdensome, and referring to individuals or persons of whom FHFGD does not have any knowledge, information, or belief.

20.     These General Objections apply to all of FHFGD's responses. To the extent Specific Objections are cited in a response, those Specific Objections are provided because they are believed to be particularly applicable to the specific request and are not to be construed as a waiver of any other General Objection applicable to the information, documents, and things falling within the scope of the request. Thus, any Specific Objections do not supersede these General Objections and should not be construed as setting forth FHFGD's only objections.

21.     FHFGD's responses to Defendant's discovery requests are not intended to indicate agreement with Defendant's instructions or definitions, or to waive the right to object to any purported definition or instruction.

22.     A response that FHFGD will produce documents, materials, or things should not be construed as a representation that such documents, materials, or things exist or existed. Such a response indicates only that documents, materials, or things responsive to the request, subject to applicable objections, will be produced if any such documents, materials, or things are found after a reasonable search.

23.     FHFGD reserves its General and Specific Objections notwithstanding that certain responsive information may be given or documents or things may be produced.

24.     The incidental production of any information, document, or thing covered by any of FHFGD's General or Specific Objections shall not be construed as a waiver of the objection with respect to any other information, document, or thing.

25.      Nothing in these responses should be construed as waiving rights that otherwise might be available to FHFGD or its clients, nor should FHFGD's production of documents or things in response to any of these requests be deemed an admission of relevancy, materiality, or admissibility in evidence of documents or things produced.

26.      These responses and objections are based upon information known and available to FHFGD at this time.  FHFGD reserves the right to modify, change, or supplement these responses and objections.

27.      FHFGD has responded and/or objected to Defendant's discovery requests set forth in Exhibit A of the Subpoena as FHFGD interprets and understands each request.  If Defendant subsequently asserts a different interpretation of any request, FHFGD reserves the right to supplement these responses and objections.

28.      FHFGD objects to the time, place, and manner of production as being unreasonably short, unduly burdensome, and harassing.

## SPECIFIC RESPONSES AND OBJECTIONS

### REQUEST NO. 1:

All documents relating to the Sublicense Agreement.

### RESPONSE TO REQUEST NO. 1:

FHFGD objects to Document Request No. 1 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the term "relating to" as used in this request is not clear and encompasses an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained

from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 2:**

All documents constituting or relating to communications between Sony and Microsoft relating to the Sublicense Agreement.

**RESPONSE TO REQUEST NO. 2:**

FHFGD objects to Document Request No. 2 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the term "relating to" as used in this request is not clear and encompasses an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 3:**

All documents constituting or relating to communications between Sony and Microsoft after July 25, 2003 relating to Immersion and/or the Sony Lawsuit.

**RESPONSE TO REQUEST NO. 3:**

FHFGD objects to Document Request No. 3 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the term "relating to" as used in this request is not clear and encompasses an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the

attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 4:**

All documents relating to discussions or negotiations between Microsoft and Sony relating to the Sublicense Agreement.

**RESPONSE TO REQUEST NO. 4:**

FHFGD objects to Document Request No. 4 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the term "relating to" as used in this request is not clear and encompasses an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 5:**

All documents relating to negotiations between Sony and Microsoft relating to a potential sublicense under any patent owned or held by Immersion, including drafts of any sublicense or other agreement between Sony and Microsoft and related communications.

**RESPONSE TO REQUEST NO. 5:**

FHFGD objects to Document Request No. 5 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the terms "relating to," "potential," "held" and

"related communications" as used in this request are not clear and encompass an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 6:**

All documents constituting or relating to communications between Sony and Microsoft relating to a potential sublicense under any patent owned or held by Immersion.

**RESPONSE TO REQUEST NO. 6:**

FHFGD objects to Document Request No. 6 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the terms "relating to," "potential," and "held" as used in this Request are not clear and encompass an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 7:**

All documents relating to efforts by Microsoft to grant Sony a sublicense to any patent owned or held by Immersion.

**RESPONSE TO REQUEST NO. 7:**

FHFGD objects to Document Request No. 7 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the terms "relating to," "efforts," and "held" as used in this Request are not clear and encompass an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

**REQUEST NO. 8:**

All documents relating to efforts by Sony to obtain from Microsoft a sublicense to any patent owned or held by Immersion.

**RESPONSE TO REQUEST NO. 8:**

FHFGD objects to Document Request No. 8 to the extent that it is vague, ambiguous, overbroad, and unduly burdensome because the terms "relating to," "efforts," and "held" as used in this Request are not clear and encompass an unreasonably broad range of topics irrelevant to the matters at issue; seeks the production of information that is not relevant and is not reasonably calculated to lead to discovery of admissible evidence; seeks the production of information that is protected by the attorney-client privilege and/or attorney work-product doctrine, and/or any

other applicable privilege and/or immunity; seeks the production of information that can more easily be obtained from a party to the litigation and is thereby unduly burdensome on this non-party; and seeks the production of information that is not within FHFGD's possession, custody, or control.

Dated: March 24, 2008          By: _____

James Hammond
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.
Two Freedom Square
11955 Freedom Drive
Reston, Virginia  20190-5675
571-203-2700

Attorney for non-party
Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P.

## CERTIFICATE OF SERVICE

I certify that a true and accurate copy of the foregoing RESPONSES AND

OBJECTIONS OF NON-PARTY FINNEGAN, HENDERSON, FARABOW, GARRETT &

DUNNER, L.L.P. TO SUBPOENA FROM DEFENDANT was served by first class mail,

postage prepaid, on this 24th day of March, 2008, upon counsel for Defendant:

>David R. Kaplan
>Irell & Manella LLP
>1800 Avenue of the Stars
>Suite 900
>Los Angeles, CA 90067-4276

_____
James Hammond

# EXHIBIT 8

IRELL & MANELLA LLP

A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

840 NEWPORT CENTER DRIVE, SUITE 400
NEWPORT BEACH, CA 92660-6324
TELEPHONE (949) 760-0991
FACSIMILE (949) 760-5200

1800 AVENUE OF THE STARS, SUITE 900
LOS ANGELES, CALIFORNIA 90067-4276

TELEPHONE (310) 277-1010
FACSIMILE (310) 203-7199
WEBSITE: www.irell.com

WRITER'S DIRECT
TELEPHONE (310) 203-7052
rblraholz@irell.com

May 14, 2008

**VIA E-MAIL AND U.S. MAIL**

James K. Hammond, Esq.
Finnegan Henderson Farabow
  Garrett & Dunner LLP
Two Freedom Square
11955 Freedom Drive
Reston, VA 20190-5675

      Re:   *Microsoft Corporation v. Immersion Corporation*
              Case No. 2:07-cv-00936-RSM

Dear Jim:

      As we discussed, we represent Immersion in connection with a lawsuit with Microsoft in the Western District of Washington.  The lawsuit relates to Microsoft's claim that Immersion breached a 2003 Sublicense Agreement with Immersion as a result of certain dealings with Sony in 2007.  Larry O'Rourke and David Albagli of your firm's Palo Alto, California office are well aware of the case, having defended Sony's Jennifer Liu at deposition in December 2007 and January 2008.

      In connection with the case, we served a subpoena on the Finnegan Henderson firm seeking the production of a narrow class of documents relating to the Sublicense Agreement between Microsoft and Immersion.  In particular, we are seeking documents that concern the negotiations Sony had with Microsoft with respect to obtaining rights under that agreement.  After Finnegan Henderson became involved in representing Sony in the 2005 time frame, and perhaps before, Sony and Microsoft were engaged in discussions whereby Sony would obtain rights to Immersion patents via a sublicense from Microsoft under the Immersion-Microsoft Sublicense Agreement.

      In discovery in the current case, Microsoft initially denied that there were any documents on this subject.  Later, however, Microsoft produced correspondence with Sony relating to the Sublicense Agreement, including draft agreements.  We know from the documents that Microsoft produced that at least Finnegan's Kara Stoll was

1868521

IRELL & MANELLA LLP
A REGISTERED LIMITED LIABILITY LAW PARTNERSHIP
INCLUDING PROFESSIONAL CORPORATIONS

James K. Hammond, Esq.
May 14, 2008
Page 2

actively involved in the discussions with Microsoft - we have documents showing that she directly corresponded with Microsoft representatives on the subject. Given that we have no way of knowing whether Microsoft's production of documents on this issue is complete, and that your firm should have its own correspondence readily available, we served the subpoena that we are currently discussing.

During our discussions, including our conversation yesterday May 13, 2008, you raised a question as to the breadth of the subpoena. I responded that the subpoena was narrow, and you acknowledged that you had not yet spoken to others at your firm to determine what documents may exist. While I expressed disappointment at this given the time that the subpoena has been outstanding, you agreed to follow up and get back to me by tomorrow, May 15, 2008. You also said that it might facilitate matters if we were to identify with any more precision the documents that are being requested. While we believe the subpoena sets out specific categories of materials fairly and reasonably, in an effort to reach a compromise and avoid unnecessary motion practice, we can again state that we are seeking the communications and documents exchanged between Sony (or its representatives) and Microsoft (or its representatives) after July 25, 2003 that pertain to Sony obtaining from Microsoft a sublicense or other rights to any Immersion patent, or to the Sublicense Agreement or the Immersion-Sony lawsuit. We provide this clarification to facilitate the prompt production of communication with Microsoft that are in no way privileged and should be readily available.

This letter is intended to facilitate the resolution of the discovery issue raised by our subpoena, and shall in no way compromise our rights under the subpoena should the matter not be resolved through these meet and confer efforts. We trust this answers your questions and addresses any concerns you might have. Please confirm you will be producing the documents described above.

Thank you for your prompt attention to this matter.

Very truly yours,

Richard M. Birnholz

RMB:lkw

1868521

# EXHIBIT 9

## Kaplan, Dave

**From:**   Birnholz, Richard
**Sent:**   Friday, May 16, 2008 10:43 AM
**To:**   'Hammond, James'
**Subject:** RE: Finnegan subpoena

Jim,

I have requested Microsoft's consent to send you the correspondence with Sony (including Finnegan) that we have.

RB

---

**From:** Hammond, James [mailto:james.hammond@finnegan.com]
**Sent:** Thursday, May 15, 2008 7:22 PM
**To:** Birnholz, Richard
**Cc:** Hammond, James
**Subject:** Finnegan subpoena

Dear Richard,

Thank you for your letter of May 14, 2008, regarding the Immersion subpoena on our firm.  I have several brief responses at this time.

As you suggest I do, I am actively investigating the issue of whether there might be some compromise (or not) regarding your demand for documents.  As I agreed, I am getting back to you today.  However, unfortunately, I have not yet been able to close the loop with everyone who needs to be involved, and therefore I will need another short period of time to respond.  I am mindful of your statement that discovery closes on or about June 15, 2008, and I plan to get back to you soon so we can hopefully bring our negotiations to an end one way or another.

As to the substance of your letter, I appreciate your efforts at clarification and focus.  I will not further burden the record here with a debate on the points you raise, so please do not take my silence as any form of acquiescence.  One point of clarification, however, is that I did not tell you the day before yesterday that I had not yet spoken to others at Finnegan as to what documents might exist, if any.  I have been and am in the process of making reasonable investigations appropriate to further respond to your demand.

I plan to have a more substantive response shortly.

Thank you

This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank you.

6/19/2008

# EXHIBIT 10

**Kaplan, Dave**

| | |
|---|---|
| **From:** | Drescher, Daphne |
| **Sent:** | Tuesday, June 03, 2008 2:53 PM |
| **To:** | 'james.hammond@finnegan.com' |
| **Cc:** | Birnholz, Richard; Heinrich, Alan; Kaplan, David |
| **Subject:** | Subpoena to Finnegan Henderson |
| **Attachments:** | Microsoft.zip |

Mr. Hammond,

At the request of Mr. Birnholz, I am forwarding to you a zip file containing the Microsoft/Sony correspondence which you discussed with Mr. Birnholz previously, in order to facilitate prompt response to Immersion Corporation's subpoena served on Finnegan Henderson, et al.

Best regards,

*Daphne A. Drescher*
*Senior Litigation Paralegal*
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA  90067-4276
310-203-7539 *direct line*
310-556-5282 *facsimile*

# EXHIBIT 11

**Kaplan, Dave**

| | |
|---|---|
| **From:** | Birnholz, Richard |
| **Sent:** | Thursday, June 12, 2008 4:18 PM |
| **To:** | 'Hammond, James' |
| **Subject:** | RE: Immersion Subpoena |

Jim, I have reconsidered. I will give you an additional seven days to look and respond at the Sony subpoenas, but this has no impact on the Finnegan subpoena which has been outstanding for over two months. Given that you have made no commitments and provided no substantive information, we must conclude our extensive efforts and attempts to meet and confer with you have failed. Absent us hearing something meaningful from you, please assume we will pursue motion practice.

---- Original Message ----
From: "Hammond, James" <james.hammond@finnegan.com>
Date: 6/11/08 2:41 pm
To: "Birnholz, Richard" <RBirnholz@irell.com>
Cc: "Hammond, James" <james.hammond@finnegan.com>
Subj: RE: Immersion Subpoena
Dear Richard,

I just received copies of a couple of subpoenas to Sony entities, and I would like to have an opportunity to review them and reflect on these developments before we have our phone conference on the Finnegan subpoena that was planned for 6.00 p.m. today.

Are you available during any of the afternoons later this week?

Thanks.

James K. Hammond | Partner | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | 11955 Freedom Drive, Suite 800 | Reston, VA 20190 | Main: 571.203.2700 | Direct: 571.203.2730 | Mobile: 202.251.6332 | E-Mail: james.hammond@finnegan.com

NOTICE: This e-mail is sent by a law firm and may contain information that is confidential, protected, or privileged. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately. Thank you.

---

From: Birnholz, Richard [mailto:RBirnholz@irell.com]
Sent: Tuesday, June 10, 2008 7:09 PM
To: Hammond, James
Subject: RE: Immersion Subpoena

Jim,

I can talk to you tomorrow at noon PST (3 EST). Does that work for you?

RB

---

From: Hammond, James [mailto:james.hammond@finnegan.com]
Sent: Tuesday, June 10, 2008 2:16 PM
To: Birnholz, Richard
Cc: Hammond, James
Subject: RE: Immersion Subpoena

1

Richard,

Thank you for your e-mail of yesterday.

I am continuing to look at the issue whether there might be some middle ground (or not) regarding your subpoena. After reviewing the documents and explanation you provided me yesterday, and taking into account the various entities involved, I need a little more time to finally respond as to whether there might be a compromise. Incidentally, I don't agree with the characterizations in your e-mail, but at any rate, is there a time when we might speak on the phone tomorrow afternoon?

Thanks.

James K. Hammond | Partner | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | 11955 Freedom Drive, Suite 800 | Reston, VA 20190 | Main: 571.203.2700 | Direct: 571.203.2730 | Mobile: 202.251.6332 | E-Mail: james.hammond@finnegan.com

NOTICE: This e-mail is sent by a law firm and may contain information that is confidential, protected, or privileged. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately. Thank you.

---

From: Birnholz, Richard [mailto:RBirnholz@irell.com]
Sent: Monday, June 09, 2008 11:23 AM
To: Hammond, James
Cc: Kaplan, David; Heinrich, Alan; Drescher, Daphne
Subject: RE: Immersion Subpoena

Jim,

David forwarded your email to me, as he is out of the office. Microsoft made the redactions in their production. As such, we do not know what was redacted. We made no further redactions. We assume you have the originals, which would be among the documents we have been requesting for some time now in an effort to work out the subpoena.

We have been extremely patient to allow you to investigate what we believe is a minimally burdensome subpoena for documents that at least Kara Stoll should have readily available. Please confirm promptly that you will be responding to the subpoena.

Thank you very much.

Richard Birnholz
Irell & Manella LLP

---

From: Hammond, James [mailto:james.hammond@finnegan.com]
Sent: Monday, June 09, 2008 8:06 AM
To: Kaplan, David
Cc: Hammond, James
Subject: RE: Immersion Subpoena

Dear David,

Thank you very much for your voice mail of Friday afternoon, June 6, 2008, asking for our final position with respect to Immersion's subpoena on Finnegan.

2

I am reviewing the documents that your firm sent to me on June 3, 2008.  One of the questions I have is directed to the "Redacted" designations that appear on some of these documents, in particular documents MS 10555-56.  Who did these redactions, and for what purpose?  Are there any other redactions with respect to any of the other documents you sent me?

Thanks.


James K. Hammond | Partner | Finnegan, Henderson, Farabow, Garrett & Dunner, LLP | 11955 Freedom Drive, Suite 800 | Reston, VA 20190 | Main: 571.203.2700 | Direct: 571.203.2730 | Mobile: 202.251.6332 | E-Mail: james.hammond@finnegan.com

NOTICE: This e-mail is sent by a law firm and may contain information that is confidential, protected, or privileged. If you are not the intended recipient, please delete the e-mail and any attachments and notify us immediately. Thank you.

_____

From: Kaplan, David [mailto:DKaplan@irell.com]
Sent: Wednesday, April 23, 2008 7:21 PM
To: Hammond, James
Cc: Birnholz, Richard
Subject: Immersion Subpoena


<<FAC.PDF>>
James,

With reference to the subpoena that Immersion served on Finnegan on March 24, 2008, attached please find a copy of Microsoft's First Amended Complaint against Immersion for Breach of Contract.

Regards,

Dave Kaplan, Esq.
Irell & Manella LLP
1800 Avenue of the Stars, Suite 900
Los Angeles, CA 90067
Tel: (310) 203-7105
Fax: (310) 282-5619


ccmailg.irell.com made the following annotations
----------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged, confidential and/or inside information. Any distribution or use of this communication by anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If you are not the intended recipient, please notify the sender by replying to this message and then delete it from your system. Thank you.


----------------------------------------------------------------------


This e-mail message is intended only for individual(s) to whom it is addressed and may contain information that is privileged, confidential, proprietary, or otherwise exempt from disclosure under applicable law. If you believe you have received this message in error, please advise the sender by return e-mail and delete it from your mailbox. Thank

3

you.

ccmailg.irell.com made the following annotations
----------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged,
confidential and/or inside information. Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If
you are not the intended recipient, please notify the sender by replying to this message
and then delete it from your system. Thank you.


----------------------------------------------------------------------


This e-mail message is intended only for individual(s) to whom it is addressed and
may contain information that is privileged, confidential, proprietary, or otherwise exempt
from disclosure under applicable law. If you believe you have received this message in
error, please advise the sender by return e-mail and delete it from your mailbox. Thank
you.

ccmailg.irell.com made the following annotations
----------------------------------------------------------------------
PLEASE NOTE: This message, including any attachments, may include privileged,
confidential and/or inside information. Any distribution or use of this communication by
anyone other than the intended recipient(s) is strictly prohibited and may be unlawful. If
you are not the intended recipient, please notify the sender by replying to this message
and then delete it from your system. Thank you.


----------------------------------------------------------------------


This e-mail message is intended only for individual(s) to whom it is addressed and may
contain information that is privileged, confidential, proprietary, or otherwise exempt
from disclosure under applicable law. If you believe you have received this message in
error, please advise the sender by return e-mail and delete it from your mailbox. Thank
you.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| IN RE SUBPOENA TO FINNEGAN, HENDERSON, FARABOW, GARRETT & DUNNER LLP | )<br>)<br>)<br>)<br>) |
| | ) |
| MICROSOFT CORPORATION, a Washington corporation, | ) Case No. _____<br>)<br>) (Case No. CV07 936RSM, Western<br>) District of Washington) |
| Plaintiff, | ) |
| v. | ) **IMMERSION CORPORATION'S**<br>) **MOTION TO COMPEL** |
| IMMERSION CORPORATION, a Delaware corporation, | ) **PRODUCTION OF DOCUMENTS**<br>) **BY NON-PARTY**<br>) **FINNEGAN, HENDERSON,** |
| Defendant. | ) **FARABOW, GARRETT &**<br>) **DUNNER, L.L.P** |

## [PROPOSED] ORDER

Before this Court is Immersion Corporation's Motion to Compel Production of Documents By Non-Party Finnegan, Henderson, Farabow, Garrett & Dunner, L.L.P. After due consideration, and for good cause shown, it is hereby **ORDERED** that Immersion Corporation's Motion is **GRANTED** and the Declaration, Exhibits, and documentation attached to Immersion's Motion are formally entered into the record.

**SO ORDERED AND SIGNED** this _____ day of _____ 2008.


_____
United States District Court Judge

1

## CERTIFICATE OF SERVICE

2

The undersigned attorney certifies that on the 23th day of June, 2008, a true copy of the

3    foregoing was served on each and every attorney of record herein by hand delivery:

4      James K. Hammond (james.hammond@finnegan.com)
       Finnegan, Henderson, Farabow, Garrett & Dunner, LLP
5      Two Freedom Square
       11955 Freedom Drive
6      Reston, VA 20190-5675
       *Attorney for Finnegan, Henderson, Farabow, Garrett & Dunner, LLP*
7

8      Paul J. Kundtz (pkundtz@riddellwilliams.com)
       Blake Marks-Dias (bmarksdias@riddellwilliams.com)
9      Wendy E. Lyon (wlyon@riddellwilliams.com)
       Riddell Williams P.S.
10     1001 Fourth Avenue Plaza, Suite 4500
       Seattle, WA 98154-3600
11     *Attorneys for Microsoft Corporation*

12

13

14                              *Mark L. Whitaker*
                                Mark L. Whitaker
15                              Howrey LLP
                                1299 Pennsylvania Ave NW
16                              Washington, DC 20004
                                Telephone: (202) 783-0800
17                              Facsimile: (202) 383-6610

18                              *Attorneys for Immersion Corporation*

19

20                              Irell & Manella LLP
                                1800 Avenue of the Starts, Suite 900
21                              Los Angeles, CA 90067-4276
                                Telephone: (310) 277-1010
22                              Facsimile: (310) 203-7199

23                              Byrnes & Keller LLP
                                1000 Second Avenue, 38th Floor
24                              Seattle, WA 98104
                                Telephone: (206) 622-2000
25                              Facsimile: (206) 622-2522

26
                                *Co-Counsel for Immersion Corporation*

IMMERSION CORPORATION'S MOTION AND MEMORANDUM OF
POINTS AND AUTHORITIES IN SUPPORT OF ITS MOTION TO
COMPEL PRODUCTION OF DOCUMENTS BY THE FINNEGAN LAW
FIRM - 13